**ST. LOUIS COUNTY, Missouri, and Lawrence K. Roos, Supervisor, and Theodore Glauert, et al., Plaintiffs-Appellants,**

**v.**

**The CITY OF FLORISSANT, Missouri, Defendant-Respondent.**

**No. 51204.**

Supreme Court of Missouri,

En Banc.

July 11, 1966.

Rehearing Denied Sept. 12, 1966.

Donald J. Stohr, St. Louis County Counselor, Clayton, Joseph B. Moore, St. Louis County Counselor, Clayton, Lawrence J. Bannes, Special Assistant County Counselor, St. Louis, Lewis, Rice, Tucker, Allen & Chubb and James A. Singer, J. L. Pierson, and John Torrey Berger, Jr., Clayton, for appellants.

Carroll J. Donohue, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for respondent.

WELBORN, Commissioner.

St. Louis County, its supervisor and various individuals filed suit for a declaratory judgment and injunction in order to nullify action of the City of Florissant annexing adjacent territory. The trial court found the action of the city valid and denied the requested injunctive relief. Plaintiffs have appealed from the judgment. We have jurisdiction because St. Louis County, a political subdivision of the state within the meaning of § 3, Article V, Constitution of Missouri, 1945, V.A.M.S., is a party to the litigation.

Prior to 1963, the City of Florissant operated under a special legislative charter granted in 1857 to the City of St. Ferdinand (Laws of Mo., 1856–1857, p. 574). On May 21, 1963, the voters of Florissant, acting under § 19 of Article VI, Constitution of Missouri, 1945, approved a constitutional charter which became effective September 12, 1963.

On November 11, 1963, the Florissant City Council enacted an ordinance, proposing to submit to the voters of the city, an amendment to the city's charter, extending the city's limits. The city limits had not been defined in the original charter. The amendment proposed the adoption of a new section of the charter, defining the city's limits, as extended, by metes and bounds. On December 23, 1963, the petition in this case was filed in the St. Louis Circuit Court.

Pursuant to the ordinance proposing the charter amendment, an election was held on January 14, 1964, at which the voters of Florissant approved the amendment.

Before examining the evidence on the issue of reasonableness of the annexation, we turn to the contention of the appellant that the purported annexation was invalid because of failure of the city to comply with § 71.015, RSMo 1959, V.A.M.S. (the "Sawyers Act"), and §§ 71.860 to 71.920, Laws of Mo. 1963. Noncompliance by the city with such provisions is admitted. The city's

response is that the statutory requirements do not apply to annexation by a constitutional charter city, but that if they, by their terms, do apply, they conflict with §§ 19 and 20 of Article VI of the Constitution of Missouri, 1945, and are, therefore, invalid.

House Bill No. 21, enacted by the 72nd General Assembly, Laws of 1963, p. 126, became effective October 13, 1963. The measure now appears as §§ 71.860 to 71.920 of the Revised Statutes. § 71.860 provides:

"The provisions of section 71.015 (the 'Sawyers Act') shall apply as well to all cities, towns, villages and municipalities of whatsoever kind, located in any first class county which has adopted a constitutional charter for its own local government, except as provided in section 71.920." (The exception, which will be referred to hereinafter, is not pertinent here.) St. Louis County, in which the City of Florissant is located, is a constitutional charter county.

The appellants recognize that in 1955, this court, in McConnell v. City of Kansas City, 282 S.W.2d 518, held that the Sawyers Act, insofar as it purported to apply to constitutional charter cities, conflicted with §§ 19 and 20 of Article VI of the Constitution of Missouri, 1945, and that, therefore, the act did not apply to such cities. Appellants assert that the enactment by the General Assembly in 1963 of § 71.860 was "an obvious attempt to reverse by legislative action the holding of the McConnell case insofar as it applies to home rule charter counties." In just what respect the constitutional problem considered in McConnell would be affected by the governmental structure of the county in which the municipality is located, appellants do not enlighten us. We perceive none which would require reconsideration of the basis of the McConnell holding.

Appellants contend further that the McConnell decision is of questionable authority, in the light of the en banc decision of 1965 in City of Hannibal v. Winchester, 391 S.W.2d 279. Although certain assumptions of McConnell were rejected by the majority of the court in Winchester, nevertheless, the majority opinion in no uncertain terms reaffirms the holding of McConnell. Judge Eager, in the majority opinion, stated: "For these reasons, we hold the Sawyers Act inapplicable, and in so far as it purports to apply to a constitutional charter city as a mandatory procedure, it is also unconstitutional. *We adhere to the result and, generally, to the reasoning of the McConnell case.*" (Emphasis supplied), 391 S.W.2d 283. In his concurring opinion, Judge Hyde stated: "In any event, Sec. 71.015 cannot be construed as a mandatory requirement for annexation by a charter city as the principal opinion so clearly shows." 391 S.W.2d 291. In view of this recent pronouncement, we need pursue appellants' contention in this respect no further.

The questions of the applicability and validity of §§ 71.870 to 71.920 present different considerations. § 71.870 provides:

"The legislative body of any city, town or village located within the boundaries of a first class chartered county shall not have the power to extend the limits of such city, town or village by annexation of unincorporated territory adjacent to the city, town or village in accordance with the provisions of law relating to annexation by such municipalities until an election is held at which the proposition for annexation is carried by a majority of the total votes cast in the city, town or village and by a separate majority of the total votes cast in the unincorporated territory sought to be annexed. There shall be separate elections submitting the proposition of annexation to the two groups of voters, the same to be held simultaneously. The elections shall be held, except as herein otherwise provided, in accordance with the general state law governing elections in first class counties."

§ 71.880 provides for notice to the election authority and governing body of the county of the annexation proposal. § 71.890 requires four weeks' publication of notice of the election on this proposal, the last publi-

cation to be not less than five days before the election. § 71.900 provides the form of ballot for the election and the certification of the results. § 71.910 prohibits resubmission within two years of a defeated proposal.

§ 71.920 provides, in part:

"In the event that the proposition to annex such territory is approved by a unanimous affirmative vote in both the annexing municipality and the territory sought to be annexed, the annexing municipality, other provisions of this chapter notwithstanding, shall extend its limits by ordinance to include such territory, specifying with accuracy the new boundary lines to which the city, town or village limits are extended."

The only election on the Florissant annexation proposal was that held in Florissant on the charter amendment. However, the city contends that § 71.870, by its terms, is inapplicable to it; that if it is, the entire act, including §§ 71.870–71.920, is infected by the invalidity of § 71.860 as applied to constitutional charter cities; and that, in any event, §§ 71.870–71.920 conflict with the constitutional grant by §§ 19 and 20 of Article VI of the Constitution of Missouri, 1945, to charter cities of power to extend their limits by charter amendment.

In support of its contention that § 71.870 by its terms is inapplicable, the city advances two theories. The first is that in McConnell v. City of Kansas City, supra, this court, in 1955, held that § 71.015, by its terms applicable to "any city" seeking to annex, could not be applied to a constitutional charter city; that, in enacting §§ 71.860–71.920 in 1963, the legislature is presumed to have been familiar with the McConnell decision and to have used the term "city" with the understanding that the term would not include constitutional charter cities. However, the court in McConnell did not limit the meaning of the term "any city" as employed in § 71.015. The court assumed that the term was broad enough to include a constitutional charter city. The inapplicability of the statute to such a city was not

due to any insufficiency in the language employed, but was attributable to constitutional conflicts which prevented application to the full extent of the language employed. We are, therefore, of the opinion that the argument on this basis is without merit.

The city argues further that § 71.870 is not applicable because, by its terms, it purports to limit the authority of the "legislative body" to extend the limits of a city and, in a constitutional charter city, such authority is not vested in the city's legislative body but rather in the city's voters, by way of charter amendment. City of Hannibal v. Winchester, supra; McConnell v. City of Kansas City, supra; State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762. At the time of the enactment of § 71.870, statutes applicable to certain classes and types of cities did purport to give full power to annex to the city's legislative body. See §§ 73.-030–73.060, applicable to cities of first class; § 81.080, applicable to special charter cities of less than 20,000; § 81.200, applicable to special charter cities of between 20,000 and 250,000 population; § 82.090, applicable to constitutional charter cities in which the limits were not defined by the charter. In other classes of municipalities, the legislative body had a hand in the annexation procedure, but did not have complete authority for such purpose. Thus, in second class cities, the authority was vested in "(t)he council of such city, with the consent of the majority of the legal voters of such city voting at an election therefor * * *" (§ 75.-020), in third class cities, in "(t)he mayor and council of such city," with similar consent of the voters (§ 77.020), and in fourth class cities, in "(t)he mayor and board of aldermen," likewise with consent of the voters (§ 79.020). In cities, towns and villages, the town council or board of trustees must petition the county court, which has the authority to order the annexation. § 80.030.

Thus, if the construction contended for by the city is adopted, the effect of the legislation would be considerably limited, as it

would be applicable only to first class cities, of which there are none in St. Louis County, and certain special charter cities, the provisions of § 82.090 purporting to grant authority to annex to the legislative body of a constitutional charter city having been declared unconstitutional in City of Hannibal v. Winchester, supra. Any such limitation of the application of §§ 71.870–71.920, by reason of the language of § 71.870, would be contrary to the provisions of § 71.880, part of the same act, which requires "any city, town or village located in a first class chartered county" which desires to annex unincorporated land to certify such fact to the board of election commissioners in order that the elections required by the act may be held.

■ In construing this legislation, we must, if possible, give effect to the entire act. "(I)t is the duty of the court to reconcile or harmonize, so far as is practicable, the various parts and provisions, including those that are apparently conflicting or inconsistent, * * *." 82 C.J.S. Statutes § 346, p. 714. In our opinion, the legislature intended the enactment to have the broad general coverage, stated in § 71.880, and not the limited application which would follow the construction urged by the city. This legislation is obviously a part of the continuing struggle in St. Louis County between the county government and the many municipalities of that county over the right to provide local governmental service and to exercise local governmental authority over the portions of the county which have not been incorporated as municipalities. The clear import in this act of legislative policy favoring the county should not be nullified by a construction which would make the act practically meaningless.

■ We reject the city's contention that the invalidity of § 71.860, insofar as it would make § 71.015 applicable to constitutional charter cities "infects" the 1963 amendment in its entirety so that the entire act must fall as applied to such cities. We fail to see that the provisions "relating to the dual election are inextricably connected to the provisions requiring a declaratory judgment." The only such connection pointed out by the city is the elimination of the necessity for a declaratory judgment in the event of a unanimous affirmative vote. However, as to constitutional charter cities, the requirement is nonexistent, so that the ultimate result is the same. The absence of a severability clause is of no significance. See § 1.140, RSMo 1959, V.A.M.S.

Finally, the city asserts the invalidity of §§ 71.870 to 71.920 as applied to it on the grounds that it would result "in the same irreconcilable contradiction between statute and constitution that formed the basis of the holdings in McConnell v. [City of] Kansas City [Mo.], 282 S.W.2d 518; City of Hannibal v. Winchester, supra * * *; and State [ex inf. Taylor ex rel. Kansas City] v. North Kansas City [360 Mo. 374], 228 S.W.2d 762, 771–[772]." We have referred to the first two cases cited previously. In the third, the court declared that a statutory requirement of approval of an annexation proposal by ⅔ of the voters (§ 7626, RSMo 1939) in a constitutional charter city conflicted with the constitutional requirement of a majority vote for approval of a charter amendment.

■ The cases relied upon and others do hold that a constitutional charter city has the power to annex adjacent land by an amendment of its charter; that a charter amendment is the only way by which such a city may extend its boundaries; that specific legislative authority to such effect is not required; and that the legislature may not limit the exercise of such power by imposing conditions which conflict with constitutional procedural provisions. However, municipal annexation is "a matter of more than merely municipal affairs and concern." McDonnell Aircraft Corp. v. City of Berkeley, Mo.Sup., 367 S.W.2d 498, 503 [4]. Consequently, annexation by a constitutional charter city is subject to control and regulation by the General Assembly, consistently with the constitutionally

established procedure for charter amendment. Judge Eager, in the majority opinion in City of Hannibal v. Winchester, discussed McDonnell as follows (391 S.W.2d 1. c. 285):

"The Court there also held, however, that the bringing of additional territory into cities without the consent of the inhabitants of the area was a governmental function in which the whole state had an interest; and further, that §§ 19 and 20 of Art. 6 do not give full and unrestricted legislative power to constitutional cities. We interpret this to mean that the legislature may step in where problems of state policy and interest are concerned; that it may express a state policy concerning territory to be annexed, as it has in § 71.015 by requiring that the action be 'reasonable and necessary to the proper development' of the annexing city, thus expressly giving to the courts the power to inquire into that question. *But the Berkeley case reaffirms the principle that the legislature may not prescribe a procedure for annexation which is in conflict with constitutional provisions*; and it does not hold that express legislative authority or power is necessary before a constitutional charter city may make an annexation by charter amendment under § 20 of Art. 6." (Emphasis supplied.)

He further stated (391 S.W.2d 1. c. 286):

"On matters of state policy or interest, including regulations and limitations concerning territory ouside the city, the legislature may act, so long as it does not interfere with the constitutional method of annexation or enact laws inconsistent with it. The statutes recently enacted applicable to first class charter counties (St. Louis County, at present) come within that classification. Sections 71.860–71.920, Laws 1963. Thus, although the legislature may not change the method by which such cities may annex, it may provide the scope of any such annexation and add requirements therefor as, for instance, in the annexation of other cities, towns or villages. See Section 82.090."

Judge Hyde, in his concurring opinion, stated (391 S.W.2d 1. c. 290):

"Although the Legislature cannot change the method by which the charter of a constitutional charter city may be amended, because the Constitution provides the only way it may be done, I recognize that the Legislature may provide the scope of annexation that could be accomplished by an amendment and add requirements therefor as it did in Sec. 82.090 for annexing other cities, towns or villages; and has since done by Secs. 71.860–71.920, Laws 1963, p. 126 as to certain first class counties."

Although we agree with counsel for the city that the remarks concerning the statutes here under consideration were dicta in Winchester, nevertheless they are clearly consistent with prior holdings relative to the status of annexation by constitutional charter cities, McDonnell, supra, and with cases upholding the application to constitutional charter cities of enactments of the General Assembly dealing with matters of general state-wide concern. City of Joplin v. Industrial Commission, Mo.Sup., 329 S.W.2d 687; State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502.

We do not find conflict between the statute here under consideration and the constitutional provisions relating to charter amendment. The city urges that there would be conflict with the procedures specified for submission of proposed amendments by a petition of electors or by a charter commission. However, we are called upon to decide the case now before us, not a case arising under other and different circumstances. For the same reason, we do not consider the contention that the prohibition against resubmission of a defeated proposal within two years (§ 71.910) conflicts with § 20 of Article VI. In any event, the city has not demonstrated that "the time necessarily consumed in obtaining [the results of the dual election] would, at least in many instances, make it impossible for the charter city to submit annexation proposals to its electors within the time

limits prescribed by the procedure set forth in the constitution," the problem which was created by the Sawyers Act requirement of a final declaratory judgment and which resulted in the determination of inapplicability of that Act in McConnell v. City of Kansas City, 282 S.W.2d 1. c. 522.

■ In our opinion, §§ 71.870 and 71.-880 are applicable to the action of the City of Florissant in proposing to annex additional territory and so applied, the provisions are valid and constitutional. Failure on the part of the city to comply with such requirements renders null and void the purported annexation pursuant to Ordinance No. 1358 and the election held thereunder.

Appellants also contend that the trial court should have declared invalid Ordinance No. 1326, passed by the Florissant City Council on August 13, 1963, and Ordinance No. 1329, adopted by the Council on August 19, 1963, both enactments having been made while Florissant was a special charter city. Ordinance No. 1326 extended the city's boundaries. Ordinance No. 1329 expressly repealed Ordinance No. 1326. It also extended the boundaries in terms identical with Ordinance No. 1326, but set an effective date of September 9, 1963. No action was taken to comply with the Sawyers Act with respect to either ordinance. According to the city, it attempted no exercise of jurisdiction under either ordinance over the areas involved. The trial court, in its findings of fact, concluded that the charter amendment superseded Ordinances Nos. 1326 and 1329.

■ Failure of the city, as a special charter city, to comply with the Sawyers Act would avoid the effect of Ordinances Nos. 1326 and 1329. Julian v. Mayor, Councilmen and Citizens of City of Liberty, Mo.Sup., 391 S.W.2d 864. In order to avoid any question of revival of the ordinances found to have been superseded by the charter amendment which we have held to be invalid, the final judgment should also declare Ordinances Nos. 1326 and 1329 invalid and of no effect.

Therefore, the judgment is reversed and remanded with directions to enter a new judgment declaring the purported amendment to the Charter of the City of Florissant, submitted to the voters of said city pursuant to Ordinance No. 1358, is null and void, declaring Ordinances Nos. 1326 and 1329 of the City of Florissant null and void, and enjoining the city from exercising jurisdiction over the area purported to have been annexed and its residents.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

STORCKMAN, C. J., concurs and concurs in concurring opinion of HENLEY, J., but would further hold that the Sawyers Act, § 71.015, RSMo 1959, V.A.M.S., is constitutional and applicable to constitutional charter cities for the reasons stated in his dissenting opinion in City of Hannibal v. Winchester, Mo., 391 S.W.2d 279, at page 291.

HENLEY, J., concurs in separate concurring opinion filed.

EAGER and DONNELLY, JJ., concur and concur in concurring opinion of HENLEY, J.

HYDE, J., dissents in separate dissenting opinion filed.

FINCH, J., dissents in separate dissenting opinion filed.

HOLMAN, J., dubitante.

CONCURRING OPINION

HENLEY, Judge.

I concur in the opinion of Welborn, C., for these additional reasons.

In a supplemental brief filed after the case was transferred to the court en banc, and subsequent oral argument, the city has further discussed its contentions that §§ 71.860 to 71.920 RSMo 1959, V.A.M.S. (Laws of 1963) are invalid as applied to constitutional charter cities, because (1) the dual election requirement of § 71.870 and the procedures prescribed by §§ 71.880 to 71.910 conflict with the procedures prescribed by Article VI, § 20, Constitution of Missouri, V.A.M.S.; and, (2) apart from the conflict between statutory and constitutional procedure, §§ 71.870 to 71.910 are invalid in that they impose limitations on the constitutional grant of power to charter cities.

Much of the city's argument is devoted to a demonstration of conflicts between the two procedures where the proposition of annexation of territory by a charter city is instituted by either a charter commission or by petition of its electors. We are not in this case presented with a live question as to what the possible conflicts in procedures might be where annexation is proposed by charter commission or petition; a justiciable controversy is not presented by those possibilities. This annexation proposal was instituted by the legislative body of the city; therefore, we are concerned here only with whether the procedures prescribed by the constitution and these statutes are in conflict, where the annexation proposal is instituted by a legislative body. What we might say now about whether the procedures conflict where the annexation proposal is instituted by charter commission or petition would be advisory only and pure dicta.

It is, as stated by the city, well-settled that annexation by a constitutional charter city may be accomplished only by amendment of its charter. City of Hannibal v. Winchester, Mo., 391 S.W.2d 279; McDonnell Aircraft Corporation v. City of Berkeley, Mo., 367 S.W.2d 498. As stated in the opinion by Welborn, C., this court held in the Hannibal case, supra, 391 S.W.2d 1.c. 286: "On matters of state policy or inter-est, including regulations and limitations concerning territory outside the city, the legislature may act, so long as it does not interfere with the constitutional method of annexation or enact laws inconsistent with it." Do §§ 71.870 to 71.900 interfere with the constitutional method and is the procedure prescribed by those sections inconsistent with that mode established by the constitution? I say not.

Section 20 of Article VI provides that proposed amendments to the charter shall be submitted to the electors and shall become a part of the charter on approval by a majority. Section 71.870 provides that the legislative body of the city shall not have the power to extend its limits by annexation of unincorporated territory until an election is held and the proposition carried by a majority vote both in the city and the territory to be annexed. That section further provides that there shall be separate, but simultaneous, elections held in the city and the territory to be annexed. Nothing is said in the constitution about holding two simultaneous elections; consequently, such action is not forbidden. The additional requirement of a favorable vote from those residing in the area to be annexed does not change the method of *how* a city may amend its charter, but instead only provides restrictions on *what* the city may do by charter amendment. We have recognized that in matters of more than purely municipal interest the legislature can provide restrictions and limitations on *what* the city may do by charter amendment. See McDonnell, supra, 367 S.W.2d, 1.c. 502, where the court said, "Certainly bringing additional territory into cities without the consent of the inhabitants and owners of property therein is an important governmental function in which the whole state has an interest. This is more than a matter of only municipal affairs * * *." In the Mc-Donnell case we recognized that the legislature had authority to make additional requirements of a charter city where it seeks to annex additional territory. The dissenting opinion herein by Hyde, J., again

recognizes that it is within the authority of the legislature to impose additional requirements and refers favorably to § 82.090 as an example of restrictions the legislature may impose on *what* a charter city may do. That section applies to annexations of incorporated areas by charter cities, and requires a favorable vote first by the electors residing in the area to be annexed as well as a later favorable vote in the charter city. The requirement of a favorable vote first in the area to be annexed is a condition to annexation; a restriction or limitation imposed by the legislature. What would be the result should a proposition to annex an incorporated area fail to receive the required favorable vote of the electors of that area? The obvious answer is that the charter city desiring to annex could proceed no further with its proposal to annex. It has thus been limited and restricted in its right of annexation by legislative requirements. What would be the result where simultaneous elections are held in the charter city and the unincorporated territory to be annexed? If the proposition should fail to receive a majority vote in either the charter city or the area to be annexed the city could proceed no further with the annexation proposal. The ultimate result is the same, regardless of whether the elections are staggered as required by § 82.090 or held simultaneously as required by § 71.870. Thus the restrictions or limitations imposed on what a city may do by charter amendment in annexing unincorporated territory are no greater than those imposed by § 82.090. The limitations fixed by the legislature in §§ 71.860–71.910 do not conflict with nor are they inconsistent with the constitution.

Section 71.880 provides that before proceeding further with annexation the governing body of the city shall notify the board of election commissioners and the governing body of the county, the notice to include a description of the territory to be annexed and a copy of the city's order, resolution or ordinance calling the election. Nowhere does this section give either the Board or County Council any power to approve or disapprove the action taken by the city, the section providing merely that they be notified of the city's action. Section 20 of Article VI provides that proposed amendments to the charter shall be filed with the body having charge of city elections, "setting forth the proposed amendment," but does not specify who that body shall be. Chapter 113, RSMo 1959, V.A.M.S., provides for the appointment of a board of election commissioners who shall have charge of the conduct of elections in both the county and the city. Since the elections in the city and in the county are to be conducted by the Board (§ 113.010) it is only reasonable and proper to notify that body, and such requirement does not conflict with the constitution.

In the sense that a "notice" of election is required by § 19 of Article VI, requiring "notice" to the Board and County Council, as two additional bodies entitled thereto, does not interfere or conflict with the fundamental purpose of the constitutional requirement of notice. Notice to these bodies does not interfere with or limit the method by which the charter is to be amended.

Section 20 of Article VI provides that the legislative body of the city shall provide by ordinance that any amendment proposed shall be submitted to the electors at an election. Section 19 provides that notice of election shall be published, but neither section makes specific provision as to *who* shall publish the notice. Therefore, these sections do not exclude notice being given by the board of election commissioners as required by § 71.890.

Section 71.890 provides that the board of election commissioners shall give notice of the time and place of holding the election and the purpose for which it is to be held. Since the Board is responsible for conducting the election in the city and in the unincorporated area to be annexed, it is reasonable and proper that it be the body responsible for giving notice to the electors in both areas. For these reasons, I con-

sider that this section does not interfere or conflict with the method of charter amendment prescribed by the constitution.

There is no conflict between § 71.890 and the basic, fundamental purpose of the notice requirement of the constitution, so long as it meets the minimum requirements for publication prescribed by § 19, Article VI.

Section 19, Article VI provides that: "* * * The notice of the election shall be published *at least* once a week on the same day of the week for *at least* three weeks in some daily or weekly newspaper of general circulation in the city or county, * * * the last publication to be within two weeks of the election." (Emphasis supplied.) Section 71.890 provides that notice given by the Board shall be published four consecutive weeks in two daily newspapers "* * * throughout such county," the last publication to be not more than five days before the election. Further, "in the event there is no daily newspaper * * *" in the county then "* * * notice shall be given in two weekly newspapers of general circulation." The constitution requires that the notice be published at least *three* weeks, whereas the statute requires publication for *four* weeks; the constitution requires that the notice be published in some daily or weekly newspaper of general circulation in the city or county, whereas the statute requires publication in *two* daily newspapers of general circulation throughout the county *or*, in the event there is no such daily newspaper in the county, then in *two weekly* newspapers; the constitution requires that the last publication be *within two weeks* of the election, whereas the statute requires that the last publication be *not more than five days before* the election. Thus, we see that the statute meets or exceeds the minimum requirements for publication prescribed by the constitution.

Respondent asserts that the ballot form prescribed in § 71.900 is patently insufficient under the constitution. That section provides that the annexation proposition shall be submitted to the voters on ballots which shall be *substantially* in the following form:

"For the annexation.   ☐

Against the annexation.   ☐"

The constitution does not specify the form of the proposition or ballot for annexation, but it must be in form and substance a charter amendment for the city may annex only by amendment of its charter. The statute does not require that the proposition submitted in the city and the territory to be annexed be in exactly the same words, but requires only that it be substantially the same in form. Without any intention of prescribing or dictating the exact form of ballot to be used in the city, I consider that an annexation proposition submitted to the electors of the city in the following form would, in essence, meet the requirement that annexation by a charter city be by charter amendment, and be substantially in the form prescribed by the statute:

"A proposition to amend the charter of the City of Florissant by annexation of the following described unincorporated territory in St. Louis County, Missouri:

"For the amendment.   ☐

Against the amendment.   ☐"

The city contends that "The most decisive conflict between statute and constitution is posed by the limitation of section 71.910." This section prohibits the resubmission of an annexation proposition for a period of at least two years after it has failed of passage. For the same reason stated in the opinion of Welborn, C., I do not consider this contention. But, to venture dictum: Would not this be a restriction only on *what* the city may do, rather than an interference or conflict with the method of *how* it may be done?

I respectfully disagree with my colleague, Hyde, J., who is of the opinion that the opinion of Welborn, C., in effect overrules City of Hannibal v. Winchester, supra; McConnell v. City of Kansas City,

Mo., 282 S.W.2d 518; as well as the other cases on which those decisions are based. We do not overrule those cases, but adhere to and reaffirm our holdings therein.

Although the Sawyers Act (§ 71.015) is inapplicable to constitutional charter cities as held in those cases, §§ 71.870–71.900 *are* applicable to such cities. Failure of the City of Florissant to comply with the latter sections renders null and void the purported annexation.

## DISSENTING OPINION

HYDE, Judge.

I respectfully dissent from the opinion of Welborn, C., herein because it would in effect overrule City of Hannibal v. Winchester, Mo.Sup., 391 S.W.2d 279; McConnell v. City of Kansas City, Mo.Sup., 282 S.W.2d 518; as well as the other cases on which these decisions are based. We said in the Hannibal case (391 S.W.2d l. c. 286): "Section 20 also fixes, irrevocably, the mode by which charter cities may annex territory, and the legislature has no authority to eliminate the constitutional requirement or to fix any method inconsistent with it." As hereinafter shown, the Legislature by its 1963 Act (Laws 1963, p. 126; now Secs. 71.860–71.920, RSMo, V.A.M.S.) has fixed a method inconsistent with Section 20, Art. VI of the Constitution.

It is my view that the Legislature has no authority to apply the procedure provided by Secs. 71.860–71.920 to a constitutional charter city. As stated in the Hannibal case, I agree that the Legislature has authority to require a favorable vote in an area to be annexed as a condition to annexation of territory by a constitutional charter city. Although the Legislature may do that it cannot change the method of *how* the charter of a constitutional charter city may be amended because the constitution provides *how* it may be done. In matters of more than purely municipal interest, the Legislature can provide restrictions on *what* may be done solely by charter amendment. See Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W. 2d 195, for discussion of matters of municipal and state interest. As we recognized in McDonnell Aircraft Corporation v. City of Berkeley, Mo.Sup., 367 S.W.2d 498, 502: "Certainly bringing additional territory into cities without the consent of the inhabitants and owners of property therein is an important governmental function in which the whole state has an interest." Therefore, providing an additional requirement for annexation of additional territory of a favorable vote of the voters of such territory is certainly within the authority of the Legislature. This is exactly what the Legislature did when it adopted in 1887 what is now Sec. 82.090 providing for annexing other cities, towns or villages by constitutional charter cities. Such provisions do not change the method by which a charter city may amend its charter but instead provide restrictions on *what* such cities may do by charter amendments.

However, instead of following proper procedure such as that provided in Sec. 82.090, it adopted, in its 1963 Act, by Secs. 71.860, 71.870, 71.880, 71.890 and 71.900 procedure which directly conflicts with the procedure provided by Sec. 20, Art. VI of the Constitution as to *how* an amendment to the charter of a constitutional charter city shall be made, which is the only authorized method of annexing territory by a constitutional charter city. As we said in City of Hannibal v. Winchester, Mo.Sup., 391 S.W.2d 279, 288: "Section 20 of Art. 6 of the Constitution sets out the exclusive mode of annexation for constitutional charter cities. Our cases have so stated for many years. Counsel for the city seek here to distinguish the Taylor [State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762] and McConnell cases on the ground that the Court was not there discussing the constitutionality of a mode of annexation by ordinance alone, but only the method of amendment specifically provided in the

Kansas City Charter. That is true, but this Court, both in those cases and in the prior and subsequent cases already discussed, has clearly indicated the view that *any* annexation by a constitutional charter city *is a charter amendment* and that the method provided therefor shall be followed."

The direct conflict with the procedure required by the constitution clearly appears from a comparison of the method provided by Sec. 82.090 with that provided by Secs. 71.860–71.900. The Sec. 82.090 procedure, applicable only to annexing incorporated territory, is that the mayor of the constitutional charter city first notifies the mayor of the city, town or village proposed to be annexed of its intention to annex and an election then is required to be held in such municipality on the proposition. If four-sevenths of the qualified voters of that city, town or village vote in favor of the extension, the constitutional charter city may then extend its limits by an amendment of its charter adopted by a majority of its voters. Thus the extension of the limits of the constitutional charter city is made by the method authorized by the Constitution. *Not so in the procedure established by Secs. 71.870–71.900!* That procedure completely ignores the required method of a charter amendment by which a constitutional charter city is authorized to annex territory. Instead it requires simultaneous elections "submitting the proposition of annexation to the two groups of voters," Sec. 71.870. Then Sec. 71.880 requires a copy of an order, resolution or ordinance ordering an election to be certified to the board of election commissioners and the election commissioners (not the annexing city) shall give the notice of the election, Sec. 71.890. The requirements of Sec. 71.890 for notice of the election are different from those stated in the Constitution, Secs. 19–20, Art. VI, both as to kind of newspapers, number of publications and length of time of the last publication before the election. Then Sec. 71.900 provides for a ballot that does not submit any charter amendment at all; but instead requires a vote in the city on the same proposition as submitted to the voters outside the city. Therefore, the procedure for annexation provided by these statutes cannot be applicable to a constitutional charter city unless we take back everything we have said about the method by which a constitutional charter city can annex additional territory.

Sec. 71.870–71.900 clearly conflict with Secs. 19 and 20 of Art. VI of the Constitution by attempting to establish a method of annexation that is not a charter amendment and directly conflict with the procedure required by the Constitution for the adoption of a charter amendment. Therefore, it must be held that these statutes are inapplicable to constitutional charter cities or we must overrule the Hannibal and McConnell cases and the whole line of cases on which they are based. In McConnell, we held Sec. 71.015 (Sawyers Act) inapplicable to constitutional charter cities because it provided timing of procedural steps which conflicted with the procedure required by the Constitution for the adoption of a charter amendment. The 1963 St. Louis County Act, like the Hannibal case, is a greater violation of the Constitution because it provides for annexation without any charter amendment. This issue was not discussed in the Divisional opinion because it was not adequately briefed or argued in Division. For these reasons, I would hold that the City of Florissant, being a constitutional charter city, was not affected in any way by or required to follow the procedure provided by Secs. 71.870–71.900, and that its annexation of the unincorporated territory involved, by the method provided by Secs. 19 and 20, Art. VI of the Constitution is valid.

Other sections of the 1963 Act such as 71.860 making Sec. 71.015 (Sawyers Act) applicable and Sec. 71.910 prohibiting resubmission of annexation proposition for two years need not be considered, because if they were held unconstitutional as to constitutional charter cities, the rest of

the Act might be held constitutional if it provided constitutional procedure. Since it does not, it would serve no useful purpose to discuss these sections now. Likewise, I do not discuss the contention of appellants that the "annexation was illegal, unconstitutional and void because it was unreasonable under the traditional or classic tests of reasonableness of annexations" because this was not considered in the Division No. 1 opinion. Assuming reasonableness I would affirm.

My view of concurring opinion of Henley, J., is that it recognizes that the 1963 St. Louis County Act (Laws 1963, p. 126) nowhere requires or provides for the adoption of a charter amendment to accomplish annexation of territory by a constitutional charter city and so it deems it necessary to provide an amendment to this Act to make it conform to the Constitution. It does this by authorizing a ballot that is completely different from the ballot required by Sec. 71.900, and which would require a vote on a different proposition from that provided for by the Legislature. The whole trouble with the 1963 Act, as affecting constitutional charter cities, is that it entirely disregards the procedure we have held to be the exclusive method of annexation by such cities, namely by charter amendment. Instead this Act authorizes annexation by an entirely different method, that is, a vote in an annexation election, not a charter amendment election, on the propositions "For the annexation" and "Against the annexation." This method is proper for other cities, towns and villages but it is in conflict with the method required by the Constitution for constitutional charter cities as we held in the Hannibal case and all the others on which it is based. This concurring opinion also overlooks the fact that the voters in the city and the voters in the area to be annexed are required to vote on the same proposition. There is no reference whatever anywhere in the Act to the adoption of a charter amendment, and of course the Legislature could not authorize voters out-side the city to vote on an amendment to the city charter. If it is necessary to amend the Act to provide a different kind of election from the one it has authorized, it must be done by the Legislature and cannot be done by this Court.

## DISSENTING OPINION

FINCH, Judge.

I respectfully dissent from the majority opinion written herein by Welborn, C.

The language of House Bill 21, adopted by the 1963 General Assembly and now designated as §§ 71.860–71.920 (all statutory references are to RSMo 1959 as amended and V.A.M.S.), is confusing and difficult of interpretation. The case of City of Kirkwood v. Allen, Mo., 399 S.W. 2d 30, is illustrative of ambiguities and vagueness in the Act. The questions presented by this case further demonstrate these difficulties.

I have concluded that the provisions for dual elections provided for in § 71.870 and implemented in subsequent sections are not made applicable to constitutional charter cities. Section 71.870 provides that "The legislative body of any city, town or village located within the boundaries of a first-class chartered county shall not have the power to extend the limits * * * until an election is held * * *." It then goes on to provide for simultaneous elections in the city and the area to be annexed and to require a favorable vote in both. It is well settled by City of Hannibal v. Winchester, Mo., 391 S.W.2d 279, and cases therein cited that the one and only way in which a constitutional charter city may extend its boundaries is by charter amendment. That case held that the legislative body of Hannibal could not extend the city limits by ordinance, even though the charter of the city purported to convey that power. The authority is vested in the voters by means of charter amendment. There is no other way.

Section 71.870 does not purport to limit the right of the voters of a constitutional charter city to extend the boundaries by charter amendment. Instead, it clearly and specifically says that *"the legislative body * * * shall not have the power to extend the limits"* ·unless the specified prerequisites are met. That language, in my judgment, cannot be extended to provide a limitation on what the *voters* can do by *charter amendment* under §§ 19 and 20 of Article VI of the Missouri Constitution of 1945.

This interpretation is supported by the language used in § 71.920. It provides what shall happen if there is a unanimous vote favoring annexation in both the municipality and the area to be annexed. In such event, says § 71.920, "the annexing municipality * * * *shall* extend its limits by *ordinance* to include such territory * * *." (Emphasis supplied.) The mandatory specified procedure is .by ordinance. When this is done and certified copies of the ordinance are filed with the county clerk, "the annexation shall be complete and final." Obviously, this section is applicable to munipalities other than constitutional charter cities because the latter extend their limits by charter amendment, not by ordinance as called for in this section.

It is true that § 71.860, which seeks to extend application of § 71.015 of the Sawyer Act, recites that such requirement applies to "all cities, towns, villages and municipalities of whatsoever kind," but that same language does not appear in the other sections of the Act which relate to the dual election requirement. These relate only to what "the legislative body of any city, town or village" in a first-class chartered county may do.

I do not imply by this opinion that the legislature could not limit *what* a constitutional charter city my do with reference to annexing unincorporated territory just as it has done in § 82.090 with reference

to annexation of incorporated areas. I simply would hold that the sections here under consideration are not applicable by their terms to constitutional charter cities.

I would affirm the judgment, assuming that a review of the transcript would meet the test of reasonableness. I have not considered this question because it was not considered in the majority opinion.