**HUDSON COMMUNITY ASSOCIATION, a Missouri Corporation, et al., Plaintiffs-Appellants,**

Moline Fire Protection District, Vorhof-Duenke Company, J. B. Building Company, D. V. Building Company, Intervenor-Plaintiffs-Appellants,

City of Dellwood and St. Louis County, Missouri, Intervenor-Plaintiffs,

v.

**CITY OF FERGUSON, a Municipal Corporation, Defendant-Respondent,**

John R. Grossheider et al., and the Junior College District of St. Louis, St. Louis County, Mo., Intervenor-Defendants-Respondents.

No. 33659.

St. Louis Court of Appeals, Missouri.

May 26, 1970.

Ziercher, Tzinberg, Human & Michenfelder, T. Douglas Moore, Roy W. Bergmann, Joseph Moore, County Counselor, Clayton, for intervenors-plaintiffs-appellants.

Carleno & Nick, Ferguson, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Elmer J. Meyer, Ferguson, for intervenors-defendants-respondents.

WOLFE, Presiding Justice.

This is an action for a declaratory judgment and injunction in which plaintiffs seek to have declared an annexation by the City of Ferguson unreasonable and to have the annexation set aside. It was brought by Hudson Community Association, a not-for-profit corporation, organized and operated as an "improvement association" with a membership of land owners within an area annexed by the City of Ferguson. Other plaintiffs were land owners and residents of the area. The City of Ferguson enacted an ordinance amending its charter and annexing the territory here involved. The voters of the City of Ferguson approved the annexation and the City of Ferguson assumed jurisdiction of the annexed area on April 10, 1962, and has since that date exercised jurisdiction over it.

On May 1, 1962, the Hudson Community Association and the other plaintiffs brought this action. The defendant was at no time restrained from continuing its jurisdiction over the annexed territory. The Junior College District of St. Louis, St. Louis County, Missouri, joined as an intervenor-defendant as did some other property owners in the annexed area.

The City of Dellwood, the County of St. Louis, a real estate company, two building companies and the Moline Fire Protection District intervened as parties plaintiff.

Amandus Brackman was appointed Special Commissioner to the Circuit Court to hear the case. Trial before Judge Brackman started on May 4, 1964, and concluded on May 20, 1964. The Special Commissioner filed his report August 27, 1965, with a finding that the City of Ferguson was entitled to a judgment in its favor.

Exceptions to the report were filed by the plaintiffs and intervenor-plaintiffs. On May 23, 1968, the trial court overruled the exceptions so filed and affirmed the recommendation of the Special Commissioner. It entered judgment holding the annexation valid and held that it had been since April 10, 1962, when it was first in full force and effect. After motions for a new trial were filed and overruled, an appeal was taken to the Supreme Court by the plaintiffs Hudson Community Association, David and Catherine Moore, James R. Londoff, and all the plaintiff-intervenors except the County of St. Louis and the City of Dellwood. On September 8, 1969, this cause was transferred by the Supreme Court to this court.

Before stating the facts relating to points raised asserting that the annexation is unreasonable, we will dispose of one point not related to those questions. The appellant contends that the annexation by the City of Ferguson is void because no election was held in the area annexed. We are referred to §§ 71.870 to 71.890, V.A.M.S., enacted in 1963, which require an election in both an annexing city and a separate election in the territory to be annexed. Those sections also set forth the manner in which the elections shall be held. The City of Ferguson was and for some time had been a constitutional charter city. At the time of the annexation the City of Ferguson had complied with all the procedures then essential to annexing the area in question. It had, by amendment to

its charter by ordinance and vote, extended its boundaries to include the area and on April 10, 1962, it had completed all procedures necessary for the annexation and it took over the annexed area. The sections above requiring a vote in an area to be annexed did not become effective until more than a year later.

We are cited to St. Louis County v. City of Florissant, Mo., 406 S.W.2d 281. That case merely held that an attempted annexation by Florissant in November of 1963 which ignored the provision of § 71.870 which became effective October 13, 1963, was void. We have no such situation here for as we have stated, all procedural steps provided by law, at the time of the Ferguson annexation, had been completed.

The fact that a suit was filed in 1962 to hold the ordinance unreasonable did not in any way invalidate the procedure followed by the city because of a later passed law. We so held in Witt v. City of Webster Groves, Mo.App., 398 S.W.2d 16. A discussion of the statutes relating to annexation has been exhaustively set out in County of St. Louis v. City of Florissant, supra; City of Hannibal v. Winchester, Mo., 391 S.W.2d 279; and City of Kirkwood v. Allen, Mo., 399 S.W.2d 30. We have been cited to these cases by the appellant but none of them supports the point raised. We hold the point to be without merit.

The City of Ferguson is located in the north part of St. Louis County. Before the annexation it had an area of about 2,800 acres and a population of 25,000 people. The area annexed had a population of about 800 and embraced an area of 1,100 acres.

Ferguson was incorporated as a city before the end of the last century and in 1954 it became a constitutional charter city. Through all of the years intervening since its incorporation and at the present time it is mainly a residential city. As such it has a business section wherein there is located the usual commercial, professional and other services needed for such a community.

It had a history of being a solid, well-run community. Its charter provided for a seven-member council with one member elected at large to act as mayor of the city. The mayor had no administrative duties. He presided at meetings of the council and was the recognized head of the city for legal and ceremonial purposes. The administrative power was vested in a city manager selected and appointed by the city council. All departments of the city were under his direction except the park department and the library board. The operation of the city was by persons trained and efficient, and there appears to be no conflict in the testimony on this score.

The park department supervised a total of 103 acres in parks. This acreage is in nine different sites. The parks have many recreational facilities such as a swimming pool, baseball diamonds, tennis courts and playgrounds. A recent addition to the park system was a purchase of 25 acres in the annexed area. This park adjoins the property of the Junior College District.

The city library has a book collection valued at $150,000. It can obtain books on inter-library loan from the Missouri Library and the St. Louis Public Library. There are 10,699 borrowers from the library and 354 cards have been issued to residents of the annexed area. In addition to books, the library has a film contract with both St. Louis and St. Louis County Libraries. It renders general library service.

The city has a public works department with adequate personnel for street maintenance and snow removal. Building inspections are made within 24 hours after the builder notifies the city that his building is ready for inspection. The city has adopted the Building Officials Conference of America Code which is the same code used by the county.

The sanitation department of the city is not concerned with sewage which is handled by the Metropolitan Sewer District. The city contracts for garbage disposal at

a charge to users of $5.00 a quarter. Garbage is picked up twice weekly and disposed of at the north county landfill. One week in May and one week in October trash and rubbish is collected and disposed of. Electricity is furnished by Union Electric, and water by the St. Louis County Water Department as it is in the County. Ferguson provides street lighting.

The police department of the City employs 21 fulltime men, 8 special officers and 4 school crossing guards. All applicants for positions as regular officers are interviewed by the Chief of Police and the City Manager. An investigation is made into the background and character of each applicant, and they are given two written examinations prepared by the Civil Service Assembly of Chicago. The department is fully equipped with police cars, three-way radio communication, first-aid equipment, fire extinguishers and tear gas. The officers are trained in the use of the eqiupment and in the use of firearms.

The fire department consists of a chief, an assistant chief, two captains, and 11 firemen for a total of 15 fulltime members and 8 auxiliary firemen. They work 24 hours on duty and 24 hours off duty. The department has a 1958 Segraves 750-gallon per minute pumper, a 1947 Central Custom Built 750-gallon per minute pumper, which is first line equipment; and a 1944 Ford V-8 500-gallon per minute pumper which is second line equipment. The department has a 1964 International panel truck which is an emergency rescue unit. The trucks carry all hose lines, ladders, smoke ejectors, hand tools and booster tanks required of fire trucks by the National Fire Protective Association. The emergency rescue unit carries an inhalator, blankets, hot water bottles, ice packs, smoke ejectors, Porta-Power for releasing auto accident victims, chain saws and electrical circular saw. Pumper 2 carries a 3-patient inhalator. The department follows Oklahoma A & M Red Book which is a standard text for training personnel of smaller departments. All firemen are trained to use the inhalator and resuscitator. All firemen attend various schools.

The city needs room for its expanding population. It is a well financed city and has extended its services to the annexed area.

The annexed area, as stated, contains 1,100 acres. It is mainly compact and regular in shape. Its southernmost boundary adjoins the north line of the old city limits of Ferguson. The major part of the land is north and northeast of the city. The entire northern boundary runs along Interstate Highway 270. In the eastern part there is a shopping center known as "Central City." The northern boundary of Central City runs about a mile along Highway 270 and its boundary to the east runs about the same distance along Old Halls Ferry Road. It is almost square in shape and contains about a square mile of territory. It is connected with the more compact area by a strip of land 1,500 feet in length and 500 feet in width. Central City is unincorporated as is the rest of the annexed area and consists of about 30 business enterprises such as Central Hardware Company, from which it got its name, a supermarket and other business concerns.

The land annexed is urban in character. Mr. Milton Duenke, an officer of the real estate firm and two building companies who joined as plaintiff-intervenors, testified that his building firms are engaged in a large home building and subdivision development in the area.

Prior to the annexation the area was served by St. Louis County. The county renders services to the unincorporated areas and some services to certain incorporated areas by contract. It maintains a health department, public works department, highway department and regulates zoning. The zoning of the area as set by the county has been wholly accepted by the City of Ferguson. The county also has a police department. In addition to this there is a county library service. Fire protection is not provided by the county, but

there are various fire protection districts organized throughout the county and the Moline Fire Protection District, plaintiff-intervenor, is one of them.

The extent and nature of the services rendered by the county's various departments are elaborated upon in the extensive testimony presented to the special commissioner. It covers a large part of a 1,500 page transcript of the hearing. We do not need to elaborate upon the testimony concerning county services for they have been set out in so many annexation cases that they run like a litany throughout those reported cases. The testimony presented generally was to the effect that the county services had been good.

It is first contended that the annexation " * * * is unreasonable and unnecessary because the evidence affirmatively showed that none of the standard criteria which have been held to justify annexation were met, and further showed that the City of Ferguson could not supply services to the annexed area equal to or superior to the services already being supplied thereto by St. Louis County and the Moline Fire Protection District."

We are cited to McDonnell Aircraft Corporation v. City of Berkeley, Mo., 367 S.W.2d 498, 1. c. 502, wherein the court said: "Certainly bringing additional territory into cities without the consent of the inhabitants and owners of property therein is an important governmental function in which the whole state has an interest. * * * The policy of the state in this respect as to all cities is stated in Sec. 71.015 * * *." The pertinent part of the standards provided by that section, § 71.015, V. A.M.S., are: " * * * 2. That such annexation is reasonable and necessary to the proper development of said city; and 3. The ability of said city to furnish normal municipal services of said city to said unincorporated area within a reasonable time after said annexation is to become effective. * * *."

It is contended that the annexed area is rural in character. This is not supported by the evidence. There are many subdivisions in it and more in prospect. It is fast becoming part of a megalopolis that closely surrounds the City of St. Louis. Within it is a junior college that moved there after annexation because its board wanted the college in the City of Ferguson. This will doubtlessly add to the population of the area. It is quite far from being a rural area.

The second assertion advanced in support of the contention is that it has not met standard criteria to justify the annexation in that there is no spilling over of Ferguson into the annexed area. This is quite contrary to the evidence. There was evidence that the City of Ferguson had developed to a degree that vacant property was practically unobtainable in the city prior to the annexation. There were people who worked in Ferguson who lived in the annexed area. Many people living there had petitioned the city to annex the area.

Next it is asserted that the area was well policed by the County Police prior to the annexation. The County of St. Louis consists of an area of about 500 square miles. Approximately one-third of this is within the corporate limits of cities. The remaining vast area was policed by 152 police officers. It is quite obvious from the evidence that the area is better served now than it was before. There was testimony that the streets were now patrolled with much greater frequency.

Another argument advanced against the annexation is that the connecting road servicing the old area is inadequate. This is true to some extent in all developing areas. There is evidence that a plan was underway for the grading and alignment of existing city streets and a plan for streets in the annexed area.

It is contended that "Central City" should not have been included in the an-

nexation. Passing upon this and other related points the distinguished commissioner found:

"'* * * The old City's land was being developed, and the City needed expansion, and the natural growth of the City was into the land annexed, including Central City. Finally, it must be assumed that the population of Ferguson had something in common with other subdivisions and cities in the area, which influenced the location of said Central City at the point selected.

"'But, at any rate, not a single commercial enterprise nor any person engaged in commercial business there either intervened or expresses opposition to the annexation. Consequently, the question of "reasonableness" regarding the taking of these commercial activities is not an issue in this cause. The Court has no other evidence except nonintervention. In all cases where the charge of unreasonable annexation solely for taxes is made, the persons or companies affected appeared in protest. Other parties in the area outside of the strip of land cannot be heard to complain for the commercial interests without their consent.

"'Finally, it should be noted that the stip (sic) of land is a component part of the rest of the expansion, having the same general character as the balance. It is also surrounded by cities, subdivisions, Highway 270, two Halls Ferry Roads, and if it had not been included it would practically be a "pocket of land" complained about by the County.

*   *   *   *   *   *

"'Plaintiffs complain that the said section was estimated to be about three miles, or a little more than three, distant from the police and fire departments and that this was an unreasonable distance for services; that on the way the service agencies had to leave the city limits over a private street and then back again to serve the area.

"'Considering the speed of vehicles engaged in said services I don't believe that the distance prevented effective service for the area by either. Their travel out of the limits and back in again, while it is an awkward situation, it can no doubt be corrected by the City, if given time to eliminate the departure.

"'Therefore, in my view, the inclusion of the Central City was not an abuse of discretion on the part of Ferguson.'"

Plaintiffs further complain that they will be paying double taxes for fire protection because they are in the Moline Fire Protection District. Following the annexation the city proposed a contract with the Moline Fire Protection District, plaintiff-intervenor. The terms of that contract provided that the fire protection district would exclude from its boundaries the area which the City of Ferguson had annexed and in consideration for the exclusion the Moline Fire Protection District would continue to service the annexed area and receive as compensation from the City of Ferguson a sum of money equivalent to the tax of the district on the assessed valuation of the property in the area excluded. From that time on there would be no local tax paid by residents of the area except to the City of Ferguson which would include fire protection. We see no reason why the overlap of taxes for fire protection cannot be so resolved. The same situation exists with the Black Jack Fire District that serves a small area of 200 acres.

It is also asserted that the City of Ferguson would receive tax revenue from the area without giving commensurate services to the area. The estimate of the amount of taxes that the city will receive from the area indicates that the city will in fact spend more on it than it is currently receiving from it.

The last point raised is that the annexation is not in the best interest of St. Louis County. The county apparently does not consider itself aggrieved by the deci-

sion as it did not appeal. The county will in fact be benefited by the annexation for it is relieved from serving the area in many respects.

We have been cited to a number of cases but none of them are relevant in time or in fact to the issues here presented. In City of Olivette v. Graeler, Mo., 338 S.W.2d 827, l. c. 837, the court said that while such cases are helpful in arriving at a decision of the ultimate fact questions specified, " * * * Nevertheless new laws and modern economic social trends must be taken into consideration and each case must depend on its individual facts and circumstances."

█ The passage of the ordinance and its approval by the electorate made a prima facie case of reasonableness and the burden of unreasonableness rested upon those asserting it. State ex inf. Taylor ex rel., Kansas City v. North Kansas City, Mo., 360 Mo. 374, 228 S.W.2d 762, l. c. 774. The plaintiffs and plaintiff-intervenors did not carry their burden and the judgment of the Circuit Court is affirmed.

BRADY and DOWD, JJ., concur.