Jean L. ADAMS et al., Plaintiffs,

v.

The CITY OF COLORADO SPRINGS, a Municipal Corporation, Organized and Existing Under and by Virtue of the Laws of the State of Colorado, et al., Defendants.

Civ. A. No. C-1817.

United States District Court,
D. Colorado.

Feb. 10, 1970.

1398

Creamer & Creamer, by Nathan H. Creamer and George Louis Creamer, Denver, Colo., for plaintiffs.

Frederick T. Henry, City Atty., and William T. Eckhart, Asst. City Atty., Colorado Springs, Colo., Winner, Berge, Martin & Clark, by Fred M. Winner, and Howard M. Kirshbaum, Denver, Colo., for defendants.

Kenneth G. Bueche, Gen. Counsel for Colorado Municipal League, Boulder, Colo., amicus curiae.

Before HILL, Circuit Judge and KERR and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This action is brought by a group of 277 registered voters and property owners living in an area commonly known as Cragmor, an unincorporated community adjacent to the city of Colorado Springs, Colorado, to enjoin a proposed annexation of Cragmor to Colorado Springs. Plaintiffs seek to have the Colorado Annexation Act of 1965 declared unconstitutional. Jurisdiction of the suit is predicated upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Since the constitutionality of a state statute of statewide application is involved, a three-judge court has been convened pursuant to 28 U.S.C. § 2281.

The material facts in this controversy are not in dispute. In 1965, the Colorado legislature enacted a comprehensive annexation law, C.R.S.1963, 139–21–1, et seq. (as amended). This statute establishes two different procedures for effectuating an annexation of unincorporated area by an adjacent municipality. Under the first of these, which may be used only when the area to be annexed has at least one-sixth and not to exceed two-thirds of its perimeter contiguous with the municipality, annexation may be initiated in one of two ways: (1) by a petition signed by a specified number of qualified electors in the territory to be annexed requesting that an annexation election be held in the said area; or (2) by a petition signed by the landowners of more than fifty percent of the territory to be annexed. If the annexation is initiated by a landowners' petition, persons who are qualified electors in the area to be annexed may cause an election to be held by submitting a proper petition.

Under the second procedure, which is limited to a situation in which the area to be annexed has over two-thirds contiguity with the municipality, annexation is initiated by a petition of landowners of more than fifty percent of the territory to be annexed or by resolution of the city council of the annexing municipality. In this situation no election is permitted and no right to vote is provided. If the landowners of more than fifty percent of the territory to be annexed petition for annexation, the city *must* annex the area. The city, after *notice and hearing, may* adopt a resolution unilaterally annexing the contiguous area without any participation by those living in such an area.

The two sections of land which together make up Cragmor—North Colorado Springs Additions Numbers 1 and 2—encompass a large territory about one-tenth the size of the present city of Colorado Springs. North Colorado Springs Addition Number 1 includes some 3,200 acres of land, while North Colorado Springs Addition Number 2 includes approximately 700 acres. The number of people involved is said to be 2,000, and we are also told that 86 percent of the population oppose it.

On September 23, 1969, the City Council of Colorado Springs set in motion the machinery to unilaterally annex North Colorado Springs Additions Numbers 1 and 2. The City Council has passed resolutions of intent to annex and public hearings have now been held.[1]

Since the territory to be annexed has over two-thirds contiguity with Colorado Springs, procedure two described above will be used in effectuating the proposed

---

1. On September 15, 1969, the Colorado Springs City Council held an informal public meeting to discuss the possibility of annexing the Cragmor area. On September 23, 1969, the City Council adopted a resolution of intent with regard to annexing that portion of Cragmor described as North Colorado Springs Addition Number 1. A public hearing on the proposed annexation was set for October 23, 1969. On October 14, 1969, the City Council adopted a resolution of intent with respect to annexation of the remainder of the Cragmor area, described as North Colorado Springs Addition Number 2 and a public hearing on this proposed annexation was set for November 25, 1969, but was later postponed until December 9, 1969.

annexations. Thus, there will be no vote of qualified electors and the annexation will be consummated by the unilateral action of the Colorado Springs City Council.[2]

In essence, plaintiffs argue that the statute is unconstitutional on its face in that it gives to qualified electors in an area to be annexed which has between one-sixth and two-thirds contiguity with the annexing city a vote on the issue of annexation, and at the same time withholds voting rights from qualified electors in territory to be annexed which has over two-thirds contiguity with the annexing city. This, it is said, constitutes an arbitrary classification, an invidious discrimination against the plaintiffs as voters, contrary to the equal protection clause of the Fourteenth Amendment of the United States Constitution. Plaintiffs concede that the Colorado General Assembly is empowered to create annexation machinery without granting the right to vote, but maintains that when the Assembly extends the franchise to one group it must extend the same right to another group absent a compelling public reason.

Furthermore, plaintiffs claim that their position is supported by the principles set forth by the United States Supreme Court in a series of recent decisions involving apportionment and voting rights. *E. g.*, Kramer v. Union Free School Dist. No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Reyn-

olds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).

### I.

Defendants contend that the present case presents a nonjusticiable political question and should, therefore, be dismissed, citing Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). The *Hunter* case held that the validity of an annexation could not be attacked either upon the ground that it impaired the obligation of a contract between the citizens of a municipal corporation and the corporation itself, or upon the ground that the annexation of an area without the consent of its citizens constituted a taking of property under the due process clause. However, the *Hunter* opinion contains very broad language with respect to the powers of the state vis-a-vis its political subdivisions.[3] We conclude from a reading of *Hunter* that a state has broad discretion in determining the procedures for effectuating annexation, but we do not feel that *Hunter* can or should be read as conferring absolute immunity from judicial scrutiny upon all changes which a state may see fit to make in the boundaries of its political subdivisions.

The United States Supreme Court laid to rest the argument that all matters involving changes in the boundaries of political subdivisions are non-

2. A petition requesting an annexation election, signed by over 300 residents of the Cragmor area, was submitted to the City Council. Of course, under the Colorado Act, C.R.S.1963, 139–21–5 (as amended), no election was permissible and the City Council refused to give effect to the petition.

3. Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers con-

ferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. * * * The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. Hunter v. City of Pittsburgh, 207 U.S. 161, 178–179, 28 S.Ct. 40, 46 (1907).

justiciable in Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). It held that the boundaries of a city cannot be altered so as to purposefully exclude Negroes from the city, whereby they are prevented from voting in municipal elections. The Supreme Court's view was that *Hunter* did not preclude judicial consideration of a claim that a change in municipal boundaries resulted in a violation of the Constitution.

There are cases which construe *Hunter* differently. These courts say that the procedures for effectuating annexation are not subject to review; that they do not pose a justiciable question; that the issue is political. Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6th Cir.), cert. denied, 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967); Detroit Edison Co. v. East China Township School Dist. No. 3, 247 F.Supp. 296 (E.D.Mich.1965), aff'd., 378 F.2d 225 (6th Cir.), cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967). We doubt whether the Supreme Court would so categorize annexation problems. There is no reason for exempting annexation procedures from the requirements of equal protection which apply to all other areas of state legislative activity. As our own Circuit Court has stated in reviewing the Kansas annexation law:

> And certain it is that a state cannot legislate upon even a matter of complete state interest in such a manner as to abuse a federal constitutional right. International Harvester Co. v. Kansas City, 308 F.2d 35, 38 (10th Cir. 1962), cert. denied, 371 U.S. 948, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963).

Moreover, recent Supreme Court decisions have substantially reduced the category of political question, especially in those cases involving discrimination in relation to the franchise. *See, e. g.*, Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Kramer v. Union Free School Dist. No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

We conclude that the instant controversy poses a justiciable issue.

## II.

Jurisdiction in civil rights cases is conferred on the federal district courts by 28 U.S.C. § 1343. Section 1343(3) of Title 28 is the jurisdictional parallel to one of the early civil rights acts, 42 U.S.C. § 1983, and its effect is to remove the need for showing the jurisdictional amount normally required in cases arising under Acts of Congress. 28 U.S.C. § 1331.

Section 1983 applies to:

> Every person, who under color of any statute * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights * * * secured by the Constitution * * *.

▌ Defendants contend that since the city of Colorado Springs is not a "person" within the meaning of the Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343 have no application. *See* Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, this action is not brought against the city alone. Each member of the Colorado Springs City Council, as well as the mayor and the city manager, are named as defendants. These individuals are "persons" within the meaning of 42 U.S.C. § 1983, and it is alleged that their conduct pursuant to a purportedly unconstitutional state statute deprives citizens of their constitutional rights. *See, e. g.*, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Thus, the doctrine of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), is inapplicable and does not preclude maintaining this suit under 28 U.S.C. § 1343.

Defendants further contend that plaintiffs' real purpose in bringing this action is prevention of increased taxation which will result from annexation and that this suit, therefore, involves property rights rather than personal rights; that these are capable of mone-

tary valuation, and the suit may not be maintained under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). *See* Hague v. C.I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (Stone J. concurring).

■ In the instant case, plaintiffs allege the deprivation of a substantial personal right—the right to equal treatment in the distribution of the franchise. It is true that plaintiffs may stand to suffer increased taxation as a result of the annexation, but this is insufficient to preclude this suit under 28 U.S.C. § 1343. The Supreme Court has recognized that a suit may be instituted under 28 U.S.C. § 1343 where the plaintiff's primary claim is for deprivation of a personal right, even though the plaintiff may also suffer monetary damage due to defendant's acts. *See, e. g.,* Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

■ Some courts have looked behind allegations that personal rights are involved and have dismissed suits brought under 28 U.S.C. § 1343 finding that the plaintiff's motives were the protection of property rights. *E. g.,* Pierre v. Jordan, 333 F.2d 951 (9th Cir. 1964); Detroit Edison Co. v. East China Township School Dist. No. 3, 247 F.Supp. 296 (E. D.Mich.1965). The weighing of conflicting motives is difficult and in a case like the present is impractical. Where, as here, the face of the complaint alleges discrimination in the distribution of the franchise, jurisdiction may be predicated upon 28 U.S.C. § 1343, and no showing of jurisdictional amount is required.

### III.

■ Defendants claim that the present controversy is not ripe for adjudication since the proposed annexation of the Cragmor area has not been finalized at this time. We must also reject this argument. The processes by which this annexation will be effectuated have been set in motion and are now at an advanced stage. Resolutions of intent to annex have been adopted by the Colorado Springs City Council and hearings have been held. There is nothing in the record to suggest that the proposed annexation will not be finalized in the near future.[4]

Plaintiffs are exposed to the risk of irreparable damage if they are not allowed to maintain this suit prior to the completion of the annexation procedures. Under the Colorado Annexation Act, C. R.S. 1963, 139–21–16 (as amended), even if the procedures are declared to be unconstitutional, taxes which have been levied cannot be recovered. Plaintiffs would not have a plain remedy if they were required to wait until completion of annexation before bringing suit.

### IV.

As noted above, the crucial issue on the merits revolves around the equal protection clause; the claim of plaintiffs that unlawful discrimination exists; that there is no rational basis for the legislature's distinction between territory with less than two-thirds contiguity with the annexing city and territory with more than two-thirds contiguity for the purpose of requiring the consent by vote of the inhabitants to the annexation.

Plaintiffs seek to equate their position with that of the plaintiffs in the several voting rights cases. Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Kramer v. Union Free School Dist. No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Lucas v. Forty-Fourth General Assembly, 377 U. S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); and Gray v. Sanders, 372 U.S. 368, 83

4. In fact, a letter dated October 15, 1969, which stressed the need for the proposed annexations and which was signed by all but one member of the Colorado Springs City Council, was sent to residents of Cragmor.

S.Ct. 801, 9 L.Ed.2d 821 (1963). They thus say that one group is given the right to vote while the other group is subjected, so to speak, to government without the consent of the governed, and that on its face this compels the state to come forward with justification for the attempted distinction. Kramer v. Union Free School Dist. No. 15, *supra*. Plaintiffs also contend that they fall within the Gray v. Sanders, Reynolds v. Sims and Lucas v. Forty-Fourth General Assembly principle because the Colorado Act, in extending the franchise, operates in an unequal manner and thus must be condemned consistent with the Supreme Court decisions in these voting cases.

On its face this argument appears to have merit in that the right to vote poses a sensitive constitutional issue demanding scrupulous evaluation. However, on a closer look, it does not appear that the plaintiffs' rights are of the kind that have been upheld by the Supreme Court. The factor present in the cited cases which appears to have been crucial is that the franchise was granted to one group of persons to the detriment of another group. In most instances one group had votes with disproportionate weight as opposed to a group which was partially or wholly disenfranchised,[5] or there has been a purposeful juggling of boundaries for the purpose of excluding a particular group. Gomillion v. Lightfoot, *supra*. In that instance the boundaries were fixed so as to deprive a minority group from its right to vote in a city election. In the case at bar none of the described conditions are present and so it cannot be said that there exists the invidious discrimination which has been heretofore condemned by the Supreme Court. Hence, the only question which qualifies for consideration is whether the Assembly's classification is palpably irrational and, hence, constitutionally intolerable.

We must also recognize that there is no absolute constitutional right under the *due process* clause of the Fourteenth Amendment to vote on a proposed annexation. *See* Sailors v. Board of Ed., etc., 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). This long standing undisturbed body of law, holding that the state legislature has the ultimate control of the method of annexing by its agency cities allows the legislature to grant the right to vote in some types of annexation and to deny it in others, provided that there is some rational basis for the distinction.

The equal protection clause does not preclude creation of distinct classes. It does require that such classifications be reasonably related to some legitimate state interest. It also demands that all those within the class created be treated equally. Within each of the present classes all persons residing within the territory to be annexed are treated equally with respect to the right to exercise the franchise. The sole question is then whether the classification is rational.

We are unable to hold that the distinction recognized by the Assembly as to when the franchise may be exercised is unreasonable in light of the manifest purposes for the differentia-

---

5. For example, in *Kramer*, basically only property owners or residents with children in school were permitted to vote for members of the local school board. However, the members of the school board had the power to significantly affect nonproperty owners and residents without children in a local school, since these individuals, as well as those to whom the franchise was extended, had a substantial interest in the structure of public education in their community.

Also, in *Gray*, by virtue of a "county unit" system of selecting candidates for statewide office, rural votes received disproportionate weight as compared to urban votes, and thus had more influence in the selection of candidates. If these candidates were subsequently elected, they would have substantial power to affect those living in urban areas, even though they represented primarily rural interests.

tion. Thus, where the area to be annexed has less than two-thirds contiguity with the annexing city, the interrelationship between the annexed area and the city may not be great enough to warrant a politically undesirable unilateral merger. Where, however, the territory to be annexed has over two-thirds contiguity with the annexing city, the interrelationship between the two areas is or can be so close that the city should be allowed to annex despite the unwillingness of the residents of the annexed territory. The law thus recognizes that a municipality such as Colorado Springs is severely handicapped by an annexation law which requires the approval of the property owners and qualified electors of an annexed area. It is unable to deal with groups of citizens who form small tax colonies on the borders of the core city which is the economic base of the urban area and to which the colonies owe their very existence and yet pay nothing for the advantages which the city provides. These people would seldom consent to the annexation and their non-consent would threaten the very existence of the core city.[6]

There are governmental as well as economic implications. The metropolitan area is a single social and economic unit, yet it has no consolidated government. Governmental consolidation permits a united approach to solving the problems and supplying the needs of the urban area, in terms of planning and rendition of service as well as fiscal balance.

It cannot be said then that the classification is unreasonable. Greater or lesser contiguity with a municipality is about the only reasonable test for the legislature to provide for unilateral annexation. We therefore must conclude that the Colorado Annexation Act does not deprive plaintiffs of the equal protection of the laws.

■ In upholding this statute we are, of course, mindful that the Supreme Court's decision in Hunter v. City of Pittsburgh, *supra*, continues to be the law, and we are not at liberty to limit the effect of this decision by grafting the voting rights decisions on to this annexation body of law. A reading of this case also makes clear that the due process clause does not afford protection from increased taxation without representation, so to speak. *See also* Gomillion v. Lightfoot, 364 U.S. 339, 343, 81 S.Ct. 125, 128, 5 L.Ed.2d 110 (1960), wherein the Supreme Court said:

[I]f one principle clearly emerges from the numerous decisions of this Court dealing with taxation it is that the Due Process Clause affords no immunity against mere inequalities in tax burdens, nor does it afford protection against their increase as an indirect consequence of a State's exercise of its political powers.

Although we concede that the plaintiffs' case has equitable appeal, they have not demonstrated a violation of the Fourteenth Amendment of the Constitution in terms of either inequality or due process. Hence, their claim must fail.

---

6. This is apparently the very situation which Colorado Springs faces with respect to Cragmor. In a letter signed by most of the members of the Colorado Springs City Council which was circulated to residents of Cragmor (Plaintiffs' complaint, Ex. D), it was explained that

The Colorado Springs community is now operating under an undemocratic situation. City residents pay both the City tax and the County tax, as they should, since they use County facilities outside the City continuously. * * * But County residents who live close in to the City pay only the County tax,

and not the City tax, even though they use almost all of the City facilities just as much as do the City residents. County residents who work, shop or travel in the City are protected during those times by the City police and fire departments. The roads they travel on within the City are maintained by City taxes. City-County health facilities are available to both City and County people, but City people pay for both halves while County residents pay for only the County half. Parks are used by everyone in the metropolitan area, but City residents carry the whole load of their purchase and upkeep.

### V.

Plaintiffs finally claim that the procedure for judicial review of annexations which is provided by the statute is unconstitutional because it provides for an automatic stay of execution in cases where the lower state court determines that the procedures used were invalid and also because it prevents a judge from the district in which the annexation takes place from sitting on the case. C.R.S.1963, 139–21–15 (as amended).

In International Harvester Co. v. Kansas City, 308 F.2d 35 (10th Cir. 1962), cert. denied, 371 U.S. 948, 83 S. Ct. 503, 9 L.Ed.2d 498 (1963), the Court of Appeals held that the question of what procedures should be provided for review of annexations is primarily a matter within the discretion of the legislature, provided that the review procedures are not so arbitrary and unreasonable as to constitute a denial of due process. In that case, the state of Kansas had established quo warranto as the only method for reviewing an annexation, and no private remedy was available. The Court held that such a review procedure was not a denial of due process, stating:

> Here Kansas has provided and determined the powers, methods and procedures for annexation of property by municipal corporations and the safeguards thought necessary to protect against abuse. Such a subject is a proper one for state control * * *. 308 F.2d at 38.

We conclude that the procedures for review as set forth in the Colorado Act, C.R.S.1963, 139–21–15 (as amended), are not so fundamentally unfair as to constitute a denial of due process.

For the reasons set forth above, we hold that the annexation and review procedures established by the Colorado Annexation Law did not violate either the equal protection or the due process clauses of the Fourteenth Amendment.

Judgment should be and is hereby entered in favor of the defendants. Defendants are directed to present an appropriate form of judgment for the signatures of the members of the Court.