J, Courtney MoGroarty, J.
Prospect Area Housing Development Fund Co,, Inc., petitioner and owner of premises 665 Prospect Avenue, Bronx, a 20-family low-income co-operative, individually and on behalf of other insureds similarly situated, brings this proceeding against respondents challenging the propriety and constitutionality of fire rate increases levied by respondents.
Respondents, New York Property Insurance Underwriting Association and Now York Fire Insurance Bating Organization, joined by the Superintendent of Insurance, move for an order of summary judgment dismissing the petition on the ground that it fails to state a cause of action and on the further ground that the proceeding is not a proper class action and that petitioner’s action was not timely commenced.
The underlying facts upon which these proceedings are predicated are as follows: The petitioner corporation, the owner of the premises here in question, was insured by respondent, New York Property Insurance Underwriting Assocation, hereinafter referred to as the Underwriting Association. The latter was established by article 17-B of the Insurance Law, effective September 1, 1968, to provide needed fire insurance for certain *932 depressed areas of the city. Under the statute and a plan of operations approved hy the Superintendent of Insurance, the Underwriting Association is required, subject to certain limitations not here in issue, to provide fire and extended coverage insurance to any applicant who has made diligent but unsuccessful efforts to obtain such insurance in the normal market. This statutory enactment was directed primarily for the benefit of the public residing in the “Core” area of the city. The rates charged by the Underwriting Association under the afore-mentioned statutory scheme, are regulated by the New York Fire Insurance Bating Organization, hereinaftér referred- to as the Bating Organization subject to the approval of the Superintendent of Insurance.
On January 5,1970, as it was required to do by statute (Insurance Law, § 653, subd. 3, par. [b]) respondent Bating Organization, designated by the Underwriting Association for that purpose, submitted a rate filing based on the Underwriting Association’s loss and experience which was approved.
On January 4, 1971, the Superintendent of Insurance approved a further increase.
As a result of these increases, petitioner, as an aggrieved person, appealed to the Underwriting Association seeking a review of the increases awarded; the appeal was dismissed. Whereupon petitioner requested a hearing before the Superintendent of Insurance which was denied for the following reason: “ In view of the fact that the Insurance Department, after full public hearings, has heretofore approved the rates charged by the Association after finding that they are not excessive, unfairly discriminatory, inadequate or unreasonable, there do not appear to be any grounds, based on the information you have submitted, which would justify any further hearings with respect thereto and accordingly, your request for a hearing is denied.”
This proceeding was then commenced.
Petitioner contends that relegating people of the inner city into a rating pool with concomitant higher rates is a denial of the equal protection clause of the Federal and State Constitutions ; that such geographical exclusion in this instance is tantamount to discrimination on the basis of race and color in violation of constitutional guarantees.
The bald question presented on this record and the one argued is whether the statute fixing the rate on the basis of geographical exclusion is lawful under the controlling provisions of the State and Federal -Constitutions.
*933 The power and the duty of respondents to fix the appropriate rate are prescribed by sections 183 and 653 of the Insurance Law. ■ The statute empowers respondents to establish any classification of risks and adequate, reasonable and nondiscriminatory premium charges.
No argument has been adduced directed to a constricted interpretation of the statute or attacking its details. The contention on behalf of petitioners, in brief, is that no such classification and premium charges can possibly be fair and reasonable and nondiscriminatory and that their constitutional rights have béen thus infringed.
The Fourteenth Amendment to the Constitution of the United States contains ample guarantee for equal protection of equal laws without discrimination or favor based upon unreasonable distinctioii.
The equal protection clause does not preclude creation of distinct classes but it does require that such classification be reassonably related to some legitimate State interest and that all those within the class created be treated equally. (Adams v. City of Colorado Springs, 308 F. Supp. 1397, affd. 399 U. S. 901.) Stated differently, equal protection of the laws required by the Fourteenth Amendment does not prevent the States from resorting to classification for purposes of legislation, but the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. (Royster Guano Co. v. Virginia, 253 U. S. 412.)
It is apparent or fairly inferable from the documentary proofs submitted that respondents have conformed to the provisions of the statute. Respondents show that public hearings were held, evidence gathered, arguments were heard, and statistics presented bearing upon the reasonableness of territories as a basis of classification and premium charges. The papers show that respondents had available a considerable body of information bearing upon their loss and experience factor. Respondents had before them sufficiently reliable and extensive statistics tending to show that properties located in the defined localities, here in issue, are more hazardous insurance risks than properties located elsewhere in the city.
It is apparent from the facts herein adduced that petitioners have not been deprived of equal protection of the laws. The classifications made were reasonable and not arbitrary and have a fair and substantial relation to the object of the legislation, *934 namely, to provide fire insurance for all areas of the city based upon a loss and experience ratio.
In an analogous case, Matter of British & Foreign Mar. Ins. Co. v. Stewart (30 N Y 2d 53), petitioners, residents of the same areas here involved, reasoned that placing them in the fire pool as provided by statute, with the -attendant higher rates, was an act of racial discrimination. The Court of Appeals there held (p. 59); “ Nor may it be seriously argued that the cancellation of the fire insurance policies violated section 40 (subd. 10) on the ground that it had the effect of discriminating against Negroes living in the two areas of Harlem and Bedford-Stuyvesant. (Cf. Griggs v. Duke Power Co., 401 U. S. 424; Reitman v. Mulkey, 387 U. S. 369; Hawkins v. Town of Shaw, Miss. 437 F. 2d 1286.) This argument is strongly refuted by the record and ignores both the existence and the purpose of the statutory insurance pool. In the first place, the petitioners continue to underwrite £ personal line ’ fire insurance in Harlem and Bed-ford-Stuyvesant ■ — which constitutes, by far, the greater part of their business — despite the fact that many other insurers have refused to do so. In the second place, their decision to cancel certain commercial insurance policies simply requires ■the owners of these policies to look to the statutory pool for insurance. This is precisely the reason that the pool was established. The Superintendent recognized this when he noted that a mandatory pool was the only solution to the problem of insuring property in high risk areas. The fact that the premium rates may be higher in the pool is not, of course, attributable to racial discrimination but, rather, reflects the higher degree of risk undertaken by the members of the pool in insuring the particular property. ’ ’
The rationale adopted by the Court of Appeals in that case is equally applicable to the facts at bar.
The cases cited by petitioners in support of their argument do not deal with the precise subject here under scrutiny. In the cited eases it was obvious that there was a veiled attempt to discriminate against a class and that the classifications made were illusory, a factor not here shown.
Under all the circumstances here presented, the court finds that the petition does not state a cause of action and respondents’ motion for summary judgment dismissing the petition is granted in all respects.