OPINION OF THE COURT
Herman Cahn, J.
Motion and cross motion seek a declaration relating to the constitutionality of Laws of 1989 (ch 773).
The State Legislature enacted Laws of 1989 (ch 773) as amended by Laws of 1990 (ch 17) (hereinafter Chapter 773) which provides a procedure for the determination of whether the Borough of Staten Island should separate from the City of New York and become a separate city. Plaintiffs the City of New York et al. (City) move for summary judgment seeking a declaratory judgment that Chapter 773 is violative of the home rule provision of the State Constitution and the equal protection provisions of the State and Federal Constitutions. Defendant the State of New York (State) cross-moves for a declaration of the law’s validity. Both the City and the State agree, and the court concurs, that the issue is ripe for adjudication.
If Chapter 773 survives the City’s constitutional challenges as set forth in this motion, Staten Islanders only shall be given the opportunity to vote on the following question on November 6, 1990: "Shall a charter commission to provide for the separation of the borough of Staten Island from the City of New York and for the establishment of the City of Staten Island be created?” An affirmative vote will mandate the establishment of a commission which will prepare a proposed charter for "the City of Staten Island”. After 2Vi to 3 years of *490 review and public hearings, the proposed charter will be submitted to the people of Staten Island for approval or rejection. In the event that Staten Islanders adopt said charter, the commission must then submit enabling legislation to the Legislature to effectuate the separation of Staten Island from the City of New York. Only if the Legislature enacts the enabling legislation will "the City of Staten Island” be established.
THE BACKGROUND
Nearly a century ago, in 1898, the City of New York was created in its present form, including all the five boroughs. For close to nine decades, since 1901, each Borough President has had a seat and equal voting power on the Board of Estimate.
In 1981 a lawsuit was filed challenging the constitutionality of the Board’s voting structure. Ultimately, the claim that the Board afforded Staten Island voting power in excess of its population, in contravention of the "one person, one vote” principle, was upheld (Morris v Board of Estimate, 647 F Supp 1463 [ED NY 1986], affd 831 F2d 384 [2d Cir 1987], affd 489 US —, 109 S Ct 1433 [1989]). The result of the Morris decision was that New York City’s government had to be restructured. The voters of the City approved a new charter abolishing the Board of Estimate as of September 1, 1990. The Board’s powers were in the main part transferred to the City Council, which is apportioned by population.
Many Staten Islanders perceived these developments as denying them a meaningful role in city governance. Since their actual numbers are small, the population comprising merely 5.2% of the City’s total population, they fear that their voice would be muted.
This court-mandated change in the City’s governance was an impetus behind the State Legislature’s enactment of the legislation considered herein.
ISSUES PRESENTED
The first contention of the City is that Chapter 773 is null and void as it was not enacted in accordance with a home rule message, specifically at the request of the Mayor and City Council of the City of New York. The home rule provision is contained in article IX, § 2 of the NY Constitution.
The State maintains that the subject matter of Chapter 773 *491 is beyond the requirements of home rule due to article IX, § 2 (a) and article X, § 1 of the NY Constitution.
The State asserts that the Constitution’s provisions expressly conferring jurisdiction over "creation and organization of local governments” upon the Legislature removes this matter from the realm of home rule. (NY Const, art IX, § 2 [a].) Additionally, it argues that legislation regarding a matter of State concern is not subject to home rule constraints.
The second issue presented is whether Chapter 773 violates the Fourteenth Amendment to the Constitution of the United States and article I, § 11 of the NY Constitution by failing to allow the residents of the City’s other four boroughs to vote in the November referendum.
The State maintains that Chapter 773 does not violate any existing constitutional principles as the referendum merely has an advisory, rather than determinative effect, since the entire State Legislature will actually decide the secession issue. Assuming, arguendo, that the election outcome would be determinative, the State argues that within existing constitutional principles, Chapter 773 is valid and should be upheld against attack. The State’s basic contention is that since Staten Islanders are disproportionately affected, the Legislature may rightfully have only residents of Staten Island vote on the issue of creating the commission, etc.
THE LAW

The Home Rule Message Claim

The fulcrum for the City’s contention is the home rule provision in NY Constitution, article IX, §2 (c) (i) which provides for base government autonomy[1] and article IX, § 2 (b) which provides for home rule messages on certain special legislation affecting "property, affairs or government”.[2]
The City urges that Chapter 773 is null and void because it *492 violates NY Constitution, article IX, § 2 (b) (2) which mandates the necessity for a home rule message before special legislation such as Chapter 773 may be enacted.
The State counters that enactment of Chapter 773 did not require a home rule message from the City. It bases its argument on two related theories. The first is that legislation on a matter of State concern is not subject to home rule constraints, even when the enactment encroaches the domain of the "property, affairs or government” of a municipality.
Secondly, the State maintains that NY Constitution, article IX, § 2 (a) expressly confers jurisdiction over "the creation and organization of local governments” upon the Legislature, and article X, § 1 expressly authorizes the Legislature to form municipal corporations by special law, thus removing this matter from the realm of home rule. Additionally, the State asserts that since the Constitution delegates the ability to form municipalities to the State, the matter is ipso facto one of State concern.
The home rule provision in the Constitution was enacted to provide autonomy to local governments in matters that pertain to their "property, affairs or government.” However, the courts have, over the years, narrowed the home rule restriction on State legislation so that the State may act in matters of State concern even though they relate to local matters. (See generally, Cole, Constitutional Home Rule in New York: "The Ghost of Home Rule”, 59 St John’s L Rev 713 [1985]; Hyman, Home Rule in New York 1941-1965: Retrospect and Prospect, 15 Buffalo L Rev 335 [1965]; Richland, Constitutional City Home Rule in New York, 54 Colum L Rev 311 [1954].)
The landmark case of Adler v Deegan (251 NY 467 [1929]) sustained the Multiple Dwelling Law, which established a housing code for cities having more than one million residents, over objections of the City. The holding, taken from Chief Justice Cardozo’s concurring opinion, is that even if a matter might appear to be part of the "property, affairs or government” of a city "if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality” (Adler v Deegan, supra, at 491). Additionally, rent control in New York City has been held to be matter of State concern. *493 (F. T. B. Realty Corp. v Goodman, 300 NY 140; Bucho Holding Co. v Temporary State Hous. Rent Commn., 11 NY2d 469.) This rule is currently viable and in more recent cases has been restated that if " 'the subject matter of the statute is of sufficient importance to the State generally to render it a proper subject of State legislation * * * the State may freely legislate, notwithstanding the fact that the concern of the State may also touch upon local matters’ ” (Matter of Town of Islip v Cuomo, 64 NY2d 50, 56 [1984], quoting Matter of Kelley v McGee, 57 NY2d 522, 538 [1982]).
"There is a simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt” (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370 [1978]; Town of Monroe v Carey, 96 Misc 2d 238, affd 46 NY2d 847 [1979]). However, "[t]he mere statement by the Legislature that [the] subject matter of the Statute is of State concern * * * does not in and of itself create a State concern nor does it afford the statute such a presumption” (Town of Monroe v Carey, supra, at 241).
The Constitution expressly provides that the Legislature retains plenary power over "[m]otters other than the property, affairs or government” of municipalities (NY Const, art IX, § 3 [a] [3]; Matter of Marcus v Baron, 84 AD2d 118, 136 [Hopkins, J., dissenting], revd 57 NY2d 862 [1982]). "It is well settled that the Legislature has the power to * * * create or destroy, combine or divide, and enlarge or restrict municipal corporations” (Town of Hornellsville v City of Hornell, 38 AD2d 312, 315 [4th Dept 1972]). This proposition is based upon the early case of City of New York v Village of Lawrence (250 NY 429 [1929]). Justice Lehman wrote: "The power to enlarge or restrict the boundaries of an established city is an incident of the legislative power to create and abolish municipal corporations and to define their boundaries. Legislation relating to the boundaries of political divisions of the State is a matter of State concern, and its benefits extend beyond the limits of the property, affairs and government of the city which is affected.” (Supra, at 440.)
The Lawrence case (supra) concerned a boundary dispute over a barren strip of land bordering New York City and Nassau County. The court left open the question presented in the instant case, namely, when "[d]isconnection of territory might render the existing form of government of a city inappropriate to meet the needs of its altered boundaries” or as *494 here where the ultimate secession of Staten Island "might place outside of the altered boundaries property of the city of substantial value” (supra, at 445). The Lawrence court did not "pass upon such a situation” (supra, at 445) because it differed factually from the circumstances in the case it was considering. However, the principle enunciated, that the power of the Legislature is supreme in the creation of municipalities and the definition of the boundaries of the territory under their jurisdiction, is broad and sufficiently relevant to the inquiry presented here.
The home rule message provision as interpreted by the courts does not prevent the State from responding to issues of significant State concern (Wambat Realty Corp. v State of New York, 41 NY2d 490 [1977]). Since the Legislature has the power of municipal creation, Chapter 773 does not fall within the ambit of "property, affairs or government” that require a home rule message. Issues of city boundaries and city creation are matters of significant State concern, and therefore do not require a home rule message. The Legislature may consolidate, add to, or take from the territory of a municipality without its consent and without challenge. (City of New York v State of New York, 67 Misc 2d 513, affd 31 NY2d 804; Adriaansen v Board of Educ., 222 App Div 320, affd 248 NY 542.) Accordingly, there is a clear State concern herein. The enactment of Chapter 773 embodies the plenary power of the Legislature that is expressly reserved to it for "the creation and organization of local governments” as expressly set forth in article IX, § 2 (a) and article X, § 1 of the NY Constitution and recognized in legal precedent (Matter of Marcus v Baron, 84 AD2d 118, revd 57 NY2d 862, supra).
THE EQUAL PROTECTION CLAIM

Fourteenth Amendment Claim

The statute provides for a special interest election that enfranchises only the residents of Staten Island as those particularly affected by the results of the election, which is the possible formation of a committee to draft a new charter. Since the Legislature will ultimately decide whether City of Staten Island is to be created, the referendum is advisory in nature, rather than determinative.
Under these circumstances, Chapter 773 is constitutionally valid. (Hill v Stone, 421 US 289 [1975].) In Hill the court first noted that any restriction on the right to vote (other than *495 one based on age, citizenship or residency) must promote a compelling State interest. However, if the election is of special interest, the State may limit the election to those who will be primarily affected. This principle was derived from Salyer Land Co. v Tulare Water Dist. (410 US 719 [1973]).
In Salyer (supra) the court upheld a law against an equal protection challenge. Certain landowners, lessees, and residents of a water storage district in California contended that the challenged statute was unconstitutional because it only allowed landowners to vote in the water storage district elections. They maintained that nonproperty owners had a substantial interest in the operation of the water storage district. Because the district elections served a special purpose that had a disproportionate effect on property owners, the court found that the State could legitimately impose a. landownership restriction as a means to establish a demonstrated interest in the election.
Reiterating the holding of Salyer Land Co. v Tulare (supra), the court stated in Holt Civic Club v Tuscaloosa (439 US 60, 69) that "[b]ana fide residence alone, however, does not automatically confer the right to vote on all matters, for at least in the context of special interest elections the State may constitutionally disfranchise residents who lack the required special interest in the subject matter of the election.”
Here, the referendum serves a limited purpose only: appointing a committee to draft a proposed charter to use in the event that the Legislature votes to allow Staten Island to secede. This is not a situation in which those who are allowed to vote are exercising general governmental powers over those who are disenfranchised (Holt Civic Club v Tuscaloosa, supra, at 72, n 8). Although the City argues that Staten Islanders alone will be making decisions which will affect the residents of the other boroughs, impact by itself will not automatically confer a right to vote (see, St. Louis County v City of Town & Country, 590 F Supp 731 [ED Mo 1984]).
In Ball v James (451 US 355 [1981]) the Supreme Court allowed the State to create a system for electing directors of a water reclamation district which apportioned voting power according to the amount of land owned by each voter. The majority upheld the restriction of the right to vote because it found that everyone affected by the operations of a government entity need not be enfranchised and that "the question was whether the effect of the entity’s operations on them *496 [those voting] was disproportionately greater than the effect on those seeking the vote” (451 US, supra, at 371).
In an election of general interest, restrictions on the franchise other than residence, age and citizenship must promote a compelling State interest in order to survive a constitutional attack (Kramer v Union School Dist., 395 US 621 [1969] [emphasis added]). However, in special interest elections, where one group of citizens is distinctly affected by the action or proposed action of a governmental entity, restrictions for such elections will be upheld as long as a reasonable basis for the limitation exists (Salyer Land Co. v Tulare Water Dist., 410 US 719, supra; Moorman v Wood, 504 F Supp 467 [ED Ky 1980]; Adams v City of Colorado Springs, 308 F Supp 1397, 1403, affd 399 US 901 [1970] [emphasis added]).
In the instant case, a rational basis for the enfranchisement of Staten Islanders, to the exclusion of other City residents, is readily apparent. They will be primarily affected if Staten Island is separated from the rest of New York City, despite the impact borne by all the City. The impact to be borne by all residents of the City by the proposed separation is great. Thus, for example, bonds issued by the City as a whole might well become due immediately upon the passage of the ultimate separation legislation. Many public buildings, including schools, police and fire stations, some piers, courthouses, etc., are apparently the property of the City. Separation would create serious problems of transfer of said properties and liability for payment therefor. Notwithstanding the serious impact of the proposed legislation on all the citizens of New York, it does not violate constitutional standards. It will ultimately be in the authority of the Legislature to determine whether separation is in the best interests of the people of this State, including the residents of all the five boroughs. This court’s inquiry is limited to the question whether “any state of facts reasonably may be conceived to justify” the scheme set up by the State to commence the process. (McGowan v Maryland, 366 US 420, 426 [1961]; Holt Civic Club v Tuscaloosa, 439 US 60, 74, supra.) Given the limited nature of the election and disproportionate interest of Staten Islanders, that question is answered affirmatively.
For the foregoing reasons, the City’s motion is denied and the State’s cross motion is granted.

. "[E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government”.

. "Subject to the bill of rights of local governments and other applicable provisions of this constitution, The legislature * * *
"(2) Shall have the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only (a) on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a majority of such membership, or (b), except in the case of the city of New York, on certificate of necessity from the governor reciting facts which in his judg *492 ment constitute an emergency requiring enactment of such law and, in such latter case, with the concurrence of two-thirds of the members elected to each house of the legislature.”