Robert D. MURPHY et al., Plaintiffs,

v.

KANSAS CITY, MISSOURI, et al.,
Defendants.

No. 18578-4.

United States District Court,
W. D. Missouri, W. D.

July 28, 1972.

Bernard L. Balkin, Kansas City, Mo.,
James W. Farley, Farley, Mo., for plaintiffs.

Carrol C. Kennett, Richard N. Ward,
Associate City Counselors, Kansas City,
Mo., for defendants.

Before GIBSON, Circuit Judge, and COLLINSON and HUNTER, District Judges.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This is an action brought by several persons who are residents, property owners, taxpayers and qualified voters of an unincorporated area in Platte County, Missouri. Plaintiffs on their own behalf, and purportedly on behalf of all others similarly situated, seek to enjoin a proposed annexation of certain unincorporated areas of Platte County, Missouri to Kansas City, Missouri, and seek to have portions of Section 82.090 RSMo, V.A.M.S. declared unconstitutional. This suit is brought pursuant to Title 42 U.S.C. Sections 1983 and 1988 and jurisdiction is asserted to be predicated upon 28 U.S.C. Section 1343. Because plaintiffs request an injunction restraining the enforcement of certain Missouri statutes on the grounds that they are violative of the Fourteenth Amendment to the United States Constitution, a three-judge court has been convened.

The parties have filed a stipulation of uncontroverted facts, and the material facts of this controversy are not in dispute. Defendant, the City of Kansas City, Missouri, is a constitutional charter city organized under the provisions of Article VI, Sections 16 and 20 of the Missouri Constitution of 1875, and is presently existing under Article VI, Sections 19 and 20, of the Missouri Constitution of 1945, as amended October 5, 1971, V.A.M.S. Section 5 of the Kansas City Charter provides that the City may extend its limits by an amendment to this Charter, and this is the only method so provided. Section 5 of the Kansas City Charter conforms to Article VI, Section 20, of the Missouri Constitution of 1945 which provides for amendments to constitutional city charters adopted under Article VI, Section 19, by a majority vote of the qualified electors voting on the amendment.

On May 15, 1970, Ordinance No. 38354 was introduced in the City Council of the City of Kansas City, Missouri. This ordinance proposes the submission to the electorate of Kansas City of an amendment to the City Charter extending Kansas City's corporate boundaries to include an area in Platt County, Missouri, a third class county presently adjacent to Kansas City, Missouri. The area proposed to be annexed is described in the proposed ordinance appended to this opinion. Since the proposed area to be annexed is not an incorporated area, pursuant to Article VI, Section 20, of the Constitution of 1945 and Section 5, of the Kansas City Charter, its inclusion in the city limits of Kansas City, Missouri must be accomplished by an amendment to the Kansas City Charter. Thus, the annexation need be approved only by the voters of the City of Kansas City, and persons residing in the area to be annexed have no vote.

Plaintiffs in the instant suit make no claim of a denial of due process of law; that is they do not claim that in all annexation proceedings those residents in the area being annexed are entitled to have a vote in the annexation election. Rather, plaintiffs claim that the method by which the proposed annexation of the area in which they reside is to be accomplished is violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. This claim is based on two separate contentions, which will be discussed later.

## JURISDICTION

The instant suit is brought under the provisions of Title 42 U.S.C. § 1983.[1]

---

1. 42 U.S.C. § 1983, reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ Initially, defendants contend that the City of Kansas City, Missouri, is not a "person" within the meaning of that section and therefore 28 U.S.C. § 1343 is not applicable to confer jurisdiction. Defendants rely principally on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This contention can be summarily disposed of in light of the fact that the complaint names as defendants in addition to the City of Kansas City, the mayor and city council. These individuals are "persons" within the meaning of 42 U.S.C. § 1983, and it is alleged that their conduct pursuant to state statutory and constitutional provisions, and pursuant to the Charter of the City of Kansas City, deprives plaintiffs of their constitutional rights. See, Adams v. City of Colorado Springs, 308 F.Supp. 1397 (D.C.Colo.1970), affirmed 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970). Further, plaintiffs' complaint requests only injunctive and declaratory relief and does not claim monetary compensation. Monroe v. Pape involved a request for monetary damage against a municipality, and since that decision the courts have allowed injunctive and declaratory relief against states and municipalities. See, e. g., Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Therefore, the doctrine of Monroe v. Pape is clearly distinguishable, and does not remove the instant suit from the provisions of 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343.

■ Defendants also contend that the sole and only purpose of this suit is to block an annexation and not for redress of a denial of a federally-protected right; that therefore the subject matter of the complaint is not cognizable under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, and district court jurisdiction thereunder is lacking.[2] However, plaintiffs' complaint negates this contention for its thrust is not to oppose annexation but to enjoin the presently employed method of annexation. There is no assurance that the relief requested by plaintiffs would have the effect of blocking the proposed annexation, and any such conclusion is speculative.[3]

■ Defendants additionally assert that since the proposed annexation ordinance is presently in its initial stages, and possibly will not be approved by the voters of Kansas City, plaintiffs' suit is premature and presents no controversy susceptible of judicial determination. However, the initial ordinance proposing annexation has been introduced and public hearings have been held on the matter. There has been no assertion by the defendants that the city council does not plan to proceed with the proposed annexation. Missouri court decisions have established that under state law a controversy exists and a city's "jurisdiction" over annexation proceedings attaches and becomes exclusive when an ordinance proposing annexation is first introduced, even though the ordinance might later be amended or even finally defeated. City of Joplin v. Village of Shoal Creek Drive, Mo.App., 434 S.W.2d 25 (Spfld.Ct.App.1968); Mayor, Councilmen, & Citizens of City of Liberty v. Dealer's Transport Co., 343 S.W.2d 40 (Mo.En Banc 1961); State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762 (1950). Thus, in the instant case an actual controversy does exist between plaintiffs and defendants, and plaintiffs'

2. See Pierre v. Jordan, 333 F.2d 951, 956–958 (9th Cir. 1964); Detroit Edison Co. v. East China Township School District No. 3, 247 F.Supp. 296 (E.D.Mich. 1965), affirmed 378 F.2d 225 (6th Cir. 1965) cert. den. 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967).

3. In Adams v. City of Colorado Springs, supra, where the same contention was raised the Court states: "The weighing of conflicting motives is difficult and in a case like the present is impractical. Where, as here, the face of the complaint alleges discrimination in the distribution of the franchise, jurisdiction may be predicated upon 28 U.S.C. § 1343, and no showing of jurisdictional amount is required." 308 F.Supp. 1397 at 1402.

request for relief is not premature. See Adams v. City of Colorado Springs, *supra*. In summary, plaintiff's complaint sets forth a claim under 42 U.S.C. § 1983 and this Court has jurisdiction of the subject matter under 28 U.S.C. § 1343. See Baker v. Carr, *supra* 369 U.S. 186, at 198–204, 82 S.Ct. 691.

## JUSTICIABILITY

■ Defendants contend that plaintiffs' complaint presents a nonjusticiable political question. Defendants rely primarily on Hunter v. City of Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). *Hunter* involved an annexation of the City of Allegheny by the City of Pittsburgh pursuant to a state statute which required the approval of a majority of all voters in a single election wherein the voters of both cities participated. Because of voter population differences between the two cities, the annexation was approved even though a majority of the Allegheny voters were opposed to it. The Supreme Court affirmed the annexation.[4] In accordance with *Hunter* plaintiffs' challenge under the Fourteenth Amendment to the procedure for annexation established for the City of Kansas City, Missouri by that city's charter and by the Constitution and Laws of the State of Missouri, is not justiciable.

Plaintiffs further contend the overall Missouri State annexation procedures are discriminatory in that they establish different procedures for essentially similar annexation proceedings throughout the state. The principles declared in *Hunter* also preclude this claim of plaintiffs' denial of equal protection. However, in view of the important questions presented by the complaint, they will be discussed on the merits.

## THE MISSOURI ANNEXATION PROCEDURES

The Constitution and Statutes of the State of Missouri establish several dif-

4. In so doing, the Supreme Court stated, 207 U.S. 161, 178–179, 28 S.Ct. 40, 46:

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. * * * The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. * * * The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract its territorial area, unite the whole or part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, *with or without the consent of the citizens, or even against their protests*. In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States."

The recent case of Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed. 2d 110 (1960), has somewhat limited the broad language of Hunter, other than as applies to annexation procedure. See, Detroit Edison Co. v. East China Township School Dist. No. 3, 247 F.Supp. 296 (E.D.Mich.1965) Affirmed 378 F.2d 225 (6th Cir. 1965) cert. den. 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967). *Gomillion* involved the disenfranchisement of voters by a municipality on the basis of race, and as such has no bearing on the instant case. The Court of Appeals for the Fifth, Sixth, and Tenth Circuits have held that *Hunter* is still applicable in foreclosing attack on state annexation procedures based on due process and equal protection grounds. See: Hammonds v. City of Corpus Christi, 226 F.Supp. 456 (S.D.Tex.1964), affirmed 343 F.2d 162 (5th Cir. 1965) cert. den. 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965); Detroit Edison Co. v. East China Township School Dist. No. 3, *supra*; Deane Hill Country Club, Inc., v. City of Knoxville, 379 F.2d 321 (6th Cir. 1967), cert. den. 389 U.S. 975, 88 S.Ct. 476, 19 L.Ed.2d 467 (1967); International Harvester Co. v. Kansas City, Kansas, 308 F.2d 35 (10th Cir. 1962), cert. den. 371 U.S. 948, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963); see also Adams v. City of Colorado Springs, 308 F.Supp. 1397 (D.C.Colo. 1970), affirmed 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970).

ferent procedures for annexation of additional territory by a municipality. These procedures differ depending upon whether the annexing city is a constitutional charter city, a special charter city, a city within a first class charter county, or lower class of city, town or village, and whether the area being annexed is incorporated or unincorporated. The procedures which are pertinent to a consideration of the instant case will be discussed in detail.

*(a) Annexation of unincorporated territory by a constitutional charter city.*

Article VI, Section 20, of the Missouri Constitution of 1945 provides:

"Amendments of any city charter adopted under the foregoing provisions [Article VI] may be submitted to the electors by a commission as provided for a complete charter. Amendments may also be proposed by the legislative body of the city or by petition of not less than ten per cent of the registered qualified electors of the city, filed with the body or official having charge of the city elections, setting forth the proposed amendment. The legislative body shall at once provide, by ordinance, that any amendment so proposed shall be submitted to the electors at the next election held in the city not less than sixty days after its passage, or at a special election held as provided for a charter. Any amendment approved by a majority of the qualified electors voting thereon, shall become a part of the charter at the time and under the conditions fixed in the amendment; and sections or articles may be submitted separately or in the alternative and determined as provided for a complete charter."

This constitutional provision has been interpreted by the Missouri Courts to give constitutional charter cities the power of annexation by charter amendment equivalent to a statutory authorization. McDonnell Aircraft Corp. v. City of Berkeley, 367 S.W.2d 498 (Mo. 1963). The Missouri Supreme Court, en banc, has held that Section 20 establishes the exclusive mode by which constitutional charter cities may annex territory, and that the legislature has no authority to eliminate the constitutional requirement of charter amendment or to fix any method inconsistent with it. City of Hannibal v. Winchester, 391 S. W.2d 279 (Mo., 1965). It has been further held that a constitutional charter city may not ignore the established method of annexation by charter amendment, and it may, by virtue of Section 20 alone, annex unincorporated territory without supporting legislation, subject only to a test in Missouri courts of the reasonableness and necessity of its action. See City of Hannibal v. Winchester, *supra;* State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762 (1950); McDonnell Aircraft Corp. v. City of Berkeley, *supra,* Section 82.090, RSMo, the statute which plaintiffs expressly attack in the instant case, provides in pertinent part:

Any constitutional charter city may at any time extend its limits by ordinance, specifying with accuracy the new lines to which it is proposed to extend its limits. All courts of this state shall take judicial notice of the limits of the city when thus extended, and of all the steps in the proceeding leading thereto. * * * *In all cases where the corporate limits are defined in the charter of the city, the ordinance extending the limits shall be in the form of a proposed amendment to the charter of the city,* and before the amendment shall be of any force or effect, *it shall be submitted to and accepted by a majority of the qualified voters of the city* voting at a general or special election, in all respects and in compliance with all the requirements provided for amendments to the charter of the city (emphasis added).

It has been consistently held that this statute is *not* necessary to confer annex-

ation authority upon a constitutional charter city, and as such the statute only expresses that power which has been granted to those cities by Article VI, Section 20, of the Missouri Constitution. See, City of Hannibal v. Winchester, *supra;* State ex inf. Taylor ex rel. Kansas City v. North Kansas City, *supra.* It has been further held by the Missouri courts that insofar as Section 82.090 purports to permit a constitutional charter city to annex territory by ordinance alone, it is in violation of the Missouri Constitution. City of Hannibal v. Winchester, *supra.* Thus, annexation of *unincorporated* territory by a constitutional charter city is governed exclusively by Article VI, Section 20, and by the charter of the city conducting the annexation proceedings. In accordance with Article VI, Section 20, the qualified voters of the unincorporated territory being annexed have no statutory right to vote on the question of whether or not the area in which they reside shall be included in the limits of the annexing city.

*(b) Annexation of incorporated territory by a constitutional charter city.*

The provisions of Article VI, Section 20, and the Missouri court interpretations of those provisions as discussed in the previous section are likewise applicable to a constitutional charter city's annexation of incorporated territory. However, the legislature has provided in Section 82.090 RSMo, (in addition to that portion of the statute quoted above) as follows:

Before the city extends its limits to include an incorporated city, town or village, four-sevenths of the qualified voters of the incorporated city, town or village voting at such election desired to be included within the limits of the city [annexing] shall vote in favor of the proposition, at an election held for that purpose * * * and if four-sevenths of the qualified voters voting at the election vote in favor of the proposed extension, the mayor shall certify the result to the mayor of the city seeking to extend its limits and the city may proceed to extend its limits as provided in this section.

This added requirement to annexation procedures established by Article VI Section 20, gives the qualified voters of the incorporated city, town or village a separate election in which to express their desire as to whether or not their municipality shall be absorbed by the annexing city. Although it places a limitation upon the power of a constitutional charter city to annex by charter amendment, it has been declared not to be in conflict with Article VI, Section 20, of the Missouri Constitution, and the statutory requirement of a four-sevenths approval has been stated to be valid even though conflicting with a constitutional charter of a municipality and the power to annex thereunder. See, McDonnell Aircraft Corp. v. City of Berkeley, *supra;* St. Louis County v. City of Florissant, 406 S.W.2d 281 (Mo.En Banc 1966).[5]

In summary, under Missouri law, annexation of *incorporated* territory by a constitutional charter city is governed by Article VI, Section 20, Section 82.090 RSMo, and by the charter of the annexing municipality. In this situation, the qualified voters of the incorporated area proposed to be annexed are granted the power to veto the annexation, and it cannot proceed without the four-seventh's majority approval.

*(c) Annexation of unincorporated territory by a city, town, or village located within the boundaries of a first class chartered county.*

Article VI, Section 18(a) of the Missouri Constitution provides for the adop-

---

5. "Thus, although the legislature may not change the method by which such cities may annex, it may provide the scope of any such annexation and add requirements therefor as, for instance, in the annexation of other cities, towns or villages." City of Hannibal v. Winchester, Mo., 391 S.W.2d 279, loc. cit. 286.

tion of a county charter by any county having more than 85,000 inhabitants. Upon such adoption, the county "shall be a body corporate and politic." Other subsections of Article VI, Section 18, provide procedures for the establishment and operation of charter counties. Section 18(c) provides that the county charter may provide for the vesting and exercise of legislative power pertaining to any and all service and functions of any municipality or political subdivision, except school districts, in unincorporated areas, and with certain limitations in incorporated areas. Presently, the only county within the state operating under this system is St. Louis County. However, Jackson County has adopted a charter to become effective on January 1, 1973.

The legislature, by enacting Sections 71.860–920 RSMo, has provided for substantially different annexation procedures to be followed when a city, town, or village located within the boundaries of a first class charter county proposes to annex adjacent unincorporated territory. Specifically, Section 71.870 RSMo provides in pertinent part:

> "The legislative body of any city, town or village located within the boundaries of a first class chartered county shall not have the power to extend the limits of such city, town or village by annexation of unincorporated territory adjacent to the city, town or village in accordance with the provisions of law relating to annexation by such municipalities until an election is held at which the proposition for annexation is carried by a majority of the total votes cast in the city, town or village and by a separate majority of the total votes cast in the unincorporated territory sought to be annexed. There shall be separate elections submitting the proposition of

annexation to the two groups of voters, the same to be held simultaneously."

It has been held that this statute is applicable to annexation proceedings by a constitutional charter city when the annexing city is located within the boundaries of a first class charter county, and that the statute is not in conflict with the provisions of Article VI, Section 20, of the Missouri Constitution to the extent that it requires voter approval for annexation of unincorporated territory. St. Louis County v. City of Florissant, 406 S.W.2d 281 (Mo.En Banc 1966).

Thus, annexation of unincorporated territory by a constitutional charter city located within the boundaries of a first class charter county is governed by Article VI, Section 20, of the Missouri Constitution, Sections 71.860–920, of the Revised Statutes of Missouri, and by charter of the annexing municipality. In this situation, the qualified voters of the unincorporated area proposed to be annexed must give majority approval to the annexation before it may proceed.

## THE EQUAL PROTECTION CLAIMS

As earlier noted, in asserting that the method by which the City of Kansas City proposes to annex the unincorporated area in which they reside is in violation of the equal protection clause of the Fourteenth Amendment, plaintiffs make two separate arguments.[6]

Initially, plaintiffs point to the fact that the proposed annexation will, under Article VI, Section 20, of the Missouri Constitution and under Section 5 of the Kansas City Charter, be accomplished without plaintiffs having the right to vote on the matter while the voters of Kansas City are entitled to vote on and must approve the annexation proposal. This, they contend, denies them equal

---

6. Although, in their complaint, plaintiffs question only the validity of Section 82.-090, RSMo, it is clear that their attack is directed at the total scheme of annexation procedures established by the Constitution of the State of Missouri, the Missouri Statutes, and the Charter of the City of Kansas City, all of which are relative to annexation of additional territory by the City of Kansas City.

protection of the laws in that they are denied the right to participate in this governmental decision even though they are directly affected and have a substantial interest. They further contend such practice is discrimination in favor of the voters of Kansas City, and that such discrimination is invidious, without rational basis, and is not necessary to promote any compelling state interest.

In support of this initial contention, plaintiffs attempt to equate their position with that of the plaintiffs in the voting rights cases of Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), and Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and assert that even though a question need not be submitted to the voters, once the legislature provides for a popular vote the equal protection clause applies and the vote must be granted to all persons substantially affected, and any exclusion of these persons from the election process must be shown to be necessary to promote a compelling state interest.

Plaintiffs' reliance on the above mentioned voting rights cases is misplaced. The defect that the Supreme Court found in those cases lay in the denial or dilution of voting because of group characteristics that bore no valid relationship to the interest in the subject matter of the election. As stated by the Supreme Court in Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971):

"Cipriano was no more than a reassertion of the principle, consistently recognized, that an individual may not be denied access to the ballot because of some extraneous condition, such as race, e. g., Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); wealth, e. g., Harper v. Virginia [State] Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); tax status, e. g., Kramer v. Union Free School District, 395 U. S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); or military status, e. g., Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965)."

In the instant case plaintiffs are *not residents* of the City of Kansas City being denied the right to vote in that city's elections on the grounds of race, wealth, ownership of property, tax status, military status, or period of residency. Rather, plaintiffs are residents of an unincorporated area in Platte County, Missouri. They have no statutory or constitutional right to participate in the governmental processes of the City of Kansas City, for they do not reside within the boundaries of that governmental subdivision. In annexing adjacent territory, the City of Kansas City, Missouri is exercising power entrusted to it by the State of Missouri. The case of Hunter v. City of Pittsburgh, *supra,* establishes that the State of Missouri is empowered to alter municipal boundaries "with or without the consent of the citizens, or even against their protests." The City of Kansas City, as an agency of the state exercising this power, has, as a part of its internal governmental process, a method by which its electorate exercises a vote on the matter of whether or not to extend its city limits and numerous city services to an adjacent area. This in no way violates the principles of the voting rights cases relied on by plaintiffs. Compare, Cipriano v. City of Houma, *supra;* Kramer v. Union Free School Dist., *supra.* Plaintiffs make no claim that the proposed annexation is designed purposefully to dilute or exclude some qualified voters from an area. Compare, Gomillion v. Lightfoot, *supra;* Carrington v. Rash, *supra.* Thus neither the *Cipriano* nor the *Kramer* case is applicable to limit the power of the State of Missouri or the City of Kansas City regarding annexation proceedings as declared in *Hunter.* The State of Missouri has not provided that persons situated as the plaintiffs herein shall

have a voice in the matter of the annexation of the territory in which they reside.[7] The establishment of the present procedure is within the discretion of the State under the doctrine of *Hunter* and is not in violation of the equal protection clause of the fourteenth amendment.

The final issue remaining for consideration is plaintiffs' contention that, for the purpose of requiring the consent by vote of those qualified voters residing in the territory proposed to be annexed, there is no rational basis for the legislative distinction of annexation of unincorporated territory from annexation of incorporated municipalities, or annexation of unincorporated territory by a city which lies within the boundaries of a first class charter county. Plaintiffs assert there is no compelling state interest in establishing different requirements for voting rights in a proposed annexation based on either (a) whether or not the area to be annexed is incorporated, or (b) whether or not the annexing city is within a first class chartered county. In support of this assertion, plaintiffs argue that in all annexation proceedings the residents of the area to be annexed have the same vital concerns and interests, and, hence, the establishment of these distinctions is unlawful discrimination in violation of the equal protection clause of the fourteenth amendment.

■ It is established law that a state has wide discretion in deciding whether its laws shall operate state wide, or shall operate only in certain areas, or shall affect one group of citizens differently from others. See: Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1969); Salsbury v. Maryland, 346 U.S. 545, 74 S.Ct.

280, 98 L.Ed. 281 (1954). The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's valid objective. State legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws may result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and cases cited therein.

The question in the instant case is therefore, whether or not the classification of cities and territories for the purpose of providing voter approval in annexation procedures, as established by the Missouri Constitution and laws, is rational and reasonably related to a valid state interest.

■ A review of the previously discussed annexation procedures applicable to different situations in the State of Missouri persuades that the various distinctions are not unreasonable in light of state purposes for differentation, and that plaintiffs' contentions to the contrary are without merit. The annexation of incorporated territory by a constitutional charter city involves numerous governmental implications which are not present when the annexation is of unincorporated territory. This is expressly recognized in Section 82.090 RSMo (concerning annexation of an incorporated area) as follows:

"Should the city by extension of its territorial limits include any portion of any incorporated city, town or village, the extension shall be made to include the whole territory of such incorporated city, town or village, and upon the extension being made, the corporate existence of the incorporat-

---

7. Such persons do have the right to challenge the reasonableness and necessity of the proposed annexation by action in the Missouri Courts. See State on inf. Eagle-ton v. Champ, 393 S.W.2d 516 (Mo. En Banc 1965); St. Louis County v. Village of Champ, 438 S.W.2d 205 (Mo. En Banc 1968).

ed city, town or village included in the extension ipso facto ceases and all property and rights of every kind and nature belonging to and vested in such incorporated city, town or village shall, by operation of law, at once pass to and vest in the city making the extension of its limits. All officers and employees of such incorporated city, town or village having custody or control thereof shall surrender and deliver the same to the city so extending its limits; and the city shall also, by operation of law, become liable to pay all debts and liabilities of the incorporated city, town or village."

In contrast to the replacement of an established city government and all of its services and officials, the annexation of unincorporated territory merely extends municipal government and services to an area where they have previously been non-existent. That the Missouri law recognizes this manifest difference, and grants the electorate of an incorporated area a vote on the annexation proceedings while denying this choice to the electorate of an unincorporated area, is not unreasonable. The state has an interest in preserving existing municipal corporations and in providing that their destruction be accomplished only with the consent of their electorate. The state also has an interest in the expansion of existing municipalities into adjacent unincorporated areas without undue delay or hindrance.

The annexation of unincorporated territory by a municipality which lies within the boundaries of a first class charter county involves numerous governmental implications which are not present where the annexation is being accomplished by a municipality not so situated. The primary difference between a first class charter county and other counties within the state is that the former furnishes municipal services and performs municipal functions in its unincorporated areas. The state has an interest in controlling annexation of unincorporated territory by cities located

within the boundaries of a first class charter county which is not present in the situation where the county does not provide municipal services to its unincorporated areas. As expressed by the Missouri Supreme Court in City of Olivette v. Graeler, 338 S.W.2d 827 (Mo., 1960), at page 838:

"The interest of the county as a community must be weighed against the claims of the city because the county's municipal powers are also provided by law and are a part of the public policy of the state."

And, as further expressed in City of Olivette v. Graeler, 369 S.W.2d 85, 95 (Mo.1963):

"So long as the County has an effective county organization, it should not be whittled away to a mere shell by annexations which have as their prime purpose the acquisition of more city taxes."

In explaining the reasoning behind the different procedures for annexation established for cities lying within first class charter counties, the Missouri Supreme Court in the 1963 Olivette decision, ibid., page 95, as follows:

"It seems obvious that in this highly developed and substantially urbanized community we have a situation materially different from those which exist in annexation proceedings elsewhere. This 'area' has more services and advantages available and has less need for the City's services; the County has the facilities and the organization to furnish the necessary services; the area is, in large part, highly developed through no act of the City, directly or indirectly; and the County here, by annexation, would lose control of an area which constitutes an integral part of its future plans."

Because of the municipal services performed by a first class charter county, the annexation of unincorporated territory by a city located within the boundaries of the county is similar to annexa-

tion of incorporated territory in that a pre-existing municipal-type governmental organization and its services are replaced by the municipal government and services of the annexing city.

From what has been said, it is manifest that the State of Missouri has a rational basis for providing procedures to be followed in annexation by cities located within the boundaries of first class charter counties which differ from those procedures provided for annexation of unincorporated territory in other classes of counties.

To provide there shall be voter approval in the one case and not in the other is not unreasonable in light of the ends to be achieved, and in light of the different governmental and economic repercussions which result from annexation in the two situations.

For the Constitution and laws of the State of Missouri to provide that the annexation of unincorporated territory by a city located within the boundaries of a first class charter county requires the approval of a majority of the electorate of that territory, while providing that proposed annexation of the unincorporated territory in which plaintiffs reside requires no such approval, is not unreasonable, is not without rational basis, and does not constitute a denial of equal protection of the laws under the Fourteenth Amendment to the Constitution.

For the reasons stated, the Court finds that plaintiffs' claims present a nonjusticiable political controversy under the doctrine of Hunter v. City of Pittsburgh; and the Court further finds that the acts of the defendants, pursuant to the Constitution and statutes of the State of Missouri and the Charter of Kansas City, Missouri, of which plaintiffs complain, do not abridge any substantive rights secured to plaintiffs by the Constitution of the United States.

Accordingly, it is hereby ordered, adjudged and decreed by the Court that plaintiffs' action be, and the same is hereby dismissed.

It is so ordered.

## APPENDIX

### AN ORDINANCE

SUBMITTING TO THE ELECTORS OF KANSAS CITY AT THE NEXT ELECTION TO BE HELD IN SAID CITY NOT LESS THAN 60 DAYS AFTER THE PASSAGE OF THIS ORDINANCE, AN AMENDMENT TO THE CHARTER OF SAID CITY ADOPTED FEBRUARY 24, 1925, AS AMENDED BY ADDING TO ARTICLE I OF SAID CHARTER ONE NEW SECTION TO BE KNOWN AS SECTION 4.7 EXTENDING THE CORPORATE LIMITS OF THE CITY IN PLATTE COUNTY, MISSOURI, IN AN AREA WHICH ON THE SOUTH SURROUNDS THE CITY OF WEATHERBY LAKE AND EXTENDS TO THE WEST AND NORTH OF THE PRESENT CITY LIMITS; DESCRIBING THE ADDITIONAL TERRITORY; FIXING THE DATE WHEN SUCH AMENDMENT SHALL TAKE EFFECT; AND RECOGNIZING THIS ORDINANCE TO BE AN EMERGENCY MEASURE.

BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

Section A. That there shall be submitted to the electors of Kansas City, Missouri, at the next election to be held in said City, not less than sixty (60) days after the passage of this ordinance, an amendment to the Charter of said City adopted February 24, 1925, as amended, which proposal shall read as follows:

CHARTER AMENDMENT EXTENDING THE CORPORATE LIMITS OF KANSAS CITY, MISSOURI, TO INCLUDE ADDITIONAL TERRITORY IN PLATTE COUNTY, MISSOURI, SOUTH OF THE EXISTING CITY LIMITS AND SURROUNDING THE CITY OF WEATHERBY LAKE AND ON THE WEST AND THE NORTH OF THE EXISTING CITY LIMITS IN PLATTE COUNTY, MISSOURI.

BE IT ADOPTED BY THE PEOPLE OF KANSAS CITY:

(a) That Article I of the Charter of Kansas City, Missouri, adopted February 24, 1925, as amended, is hereby amended by adding to said Article I one new section to be known as Section 4.7 to read as follows:

Sec. 4.7. Extended corporate limits— [January 1, 1971].

That in addition to all that territory in the State of Missouri, included within the corporate limits of Kansas City, Missouri, as described in this Charter, as amended, there shall also be included within the corporate limits of Kansas City, all that territory described and bounded as follows:

BEGINNING at a point on the East line of Section 35, Township 53 North, Range 34 West and 180 feet North of the Southeast corner of said Section 35, said point being on the City Limits of Kansas City, Missouri effective January 1, 1962; thence North along the East line of Section 35, and continuing North along the East line of Section 26 and 23, Township 53 North, Range 34 West to the Northeast corner of said Section 23; thence West along the North line of said Section 23 and continuing West along the North line of Section 22 and 21, Township 53 North, Range 34 West to the Northwest corner of said Section 21; thence South along the West line of said Section 21 and continuing South along the West line of Section 28, Township 53 North, Range 34 West to the Southwest corner of said Section 28, thence West 180 feet along the North line of Section 32, Township 53 North, Range 34 West to a point; thence South along a line 180 feet West of and parallel to the East line of Section 32, Township 53 North, Range 34 West to a point 180 feet North of the South line of said Section 32, said point being on the City Limits of Kansas City, Missouri effective January 1, 1962; thence East along a line 180 feet North of and parallel to the South line of Sections 32, 33, 34 and 35, Township 53 North, Range 34 West, said line being the City Limits of Kansas City, Missouri effective January 1, 1962 to a point on the East line of said Section 35, said point being the point of beginning.

ALSO BEGINNING at a point 180 feet North of the South line of Section 32, Township 53 North, Range 34 West and 180 feet West of the East line of said Section 32; thence along a line 180 feet North of and parallel to the South line of Section 32, and Section 31, Township 53 North, Range 34 West to a point 180 feet North of the South line of said Section 31 and at a point on a line which is the northerly extension of the West line of Section 5, Township 52 North, Range 34 West; thence South along the extension of the West line of Section 5, Township 52 North, Range 34 West and the West line of said Section 5 to the Southwest corner of said Section 5; thence West along the North line of Section 7, Township 52 North, Range 34 West to the Northwest corner of said Section 7; thence South along the West line of Section 7, Township 52 North, Range 34 West to the Northeast corner of Section 12, Township 52 North, Range 35 West; thence West along the North line of Section 12, Township 52 North, Range 35 West to the North-South centerline of said Section 12; thence South along the North-South centerline of Section 12, Township 52 North, Range 35 West to the intersection of said North-South centerline and the East-West centerline of said Section 12; thence West along the East-West centerline of Section 12, Township 52 North, Range 35 West to a point on the West line of said Section 12; thence South along the West line of Section 12, 13, 24, 25 and 36, Township 52 North, Range 35 West and the West line of Section 1, 12 and 13, Township 51 North, Range 35 West to the Southwest corner of Section 13, Township 51 North, Range 35 West; thence East along the South line of Section 13, Township 51

North, Range 35 West to the Southeast corner of said Section 13; thence North along the East line of Section 13, Township 51 North, Range 35 West to a point 180 feet South of the centerline of Missouri Highway 45 as now established; thence in a southeasterly direction along a line 180 feet south of and parallel to the centerline of Missouri Highway 45 to a point on the West line of Section 20, Township 51 North, Range 34 West and 180 feet South of the centerline of (Missouri Highway 45); thence South along the West line of Section 20, Township 51 North, Range 34 West to the southwest corner of said Section 20; thence East along the South line of Section 20, 21 and 22, Township 51 North, Range 34 West to the southeast corner of said Section 22; thence South along the West line of Section 26, Township 51 North, Range 34 West to the East-West centerline of said Section 26; thence East along the East-West centerline of Section 26 and 25, Township 51 North, Range 34 West to the West line of Section 30, Township 51 North, Range 33 West; thence North along the West line of said Section 30 and continuing North along the West line of Section 19, Township 51 North, Range 33 West, to a point on the south line of the northwest quarter of said Section 19; thence east along the south line of the northwest quarter of said Section 19 to a point on the east line of the subdivision of Park Hills as shown in Plat Book 6, Page 5, Recorder's office, Platte County, Missouri; thence north along said east line of the subdivision of Park Hills to a point on the northerly right-of-way line of 71st Street or an extension thereof, which street is in the Park Hills subdivision; thence west along the northerly right of way line of 71st Street or an extension thereof to its intersection with the northwesterly right-of-way line of Missouri State Highway No. 9; thence southwesterly along the northwesterly right-of-way line of Missouri State Highway No. 9 to its intersection with the northerly right of way line of the road forming the north and west boundary of the subdivision of Platte Hills No. 5; thence westerly and southwesterly along the northerly and westerly right-of-way line of said road to its intersection with the northwesterly right-of-way line of said Missouri State Highway No. 9; thence southwesterly along the northwesterly right-of-way line of Missouri State Highway No. 9 to a point 180 feet west of the east line of Section 23, Township 51 North, Range 34 West; thence north along a line 180 feet west of and parallel with the east line of said Section 23 and Sections 14 and 11, Township 51 North, Range 34 West, to a point on the southerly right-of-way line of Missouri State Highway T; thence west along the southerly right of way line of said highway to a point on the east line of the west half of the west half of said Section 11; thence south along the east line of the west half of the west half of said Section 11 to a point 180 feet south of the east-west center line of said Section 11; thence west along a line 180 feet south of and parallel with the east-west center line of said Section 11 and Section 10, Township 51 North, Range 34 West, to a point on the west line of the east half of the east half of said Section 10; thence south along the west line of the east half of the east half of said Section 10 to a point 180 feet south of the north line of the south half of the south half of said Section 10; thence west along a line 180 feet south of and parallel with the north line of the south half of the south half of said Section 10 and Sections 9 and 8, Township 51, North, Range 34 West, to a point 180 feet west of the east line of the west half of the west half of said Section 8; thence north along a line 180 feet west of the east line of the west half of the west half of said Section 8 and Section 5, Township 51 North, Range 34 West, and continuing north along a line 180 feet west of the east line of the west half of the west half of Section 32, Township 52 North, Range 34 West, to a point 180

feet south of the north line of the south half of the north half of said Section 32; thence west along a line 180 feet south of the north line of the south half of the north half of said Section 32 and Section 31, Township 52 North, Range 34 West, to a point 180 feet west of the east line of said Section 31; thence north along a line 180 feet west of and parallel with the east line of said Section 31 and Sections 30, 19 and 18, Township 52 North, Range 34 West, to a point 180 feet north of the south line of said Section 18; thence east along a line 180 feet north of and parallel with the south line of said Section 18 and Section 17, Township 52 North, Range 34 West, to a point 180 feet west of the north-south center line of said Section 17; thence north along a line 180 feet west of and parallel with the north-south center line of said Section 17 and Sections 8 and 5, Township 52 North, Range 34 West, to a point 180 feet north of the south line of the north half of the south half of said Section 5; thence east along a line 180 feet north of and parallel with the south line of the north half of the south half of said Section 5 to a point 180 feet west of the east line of said Section 5; thence north along a line 180 feet west of and parallel with the east line of said Section 5, and continuing north along a line 180 feet west of and parallel with the east line of Section 32, Township 53 North, Range 34 West, to a point 180 feet north of the south line of said Section 32, said point being the point of beginning.

EXCEPTING that area which lies within the corporate city limits of Weatherby Lake in Platte County, Missouri.

The boundary lines of Weatherby Lake are described as follows:

BEGINNING in the center of the public road at the Southwest corner of the Northwest Quarter of the Southeast Quarter of Section 15, Township 51, Range 34, in Platte County, Missouri; thence West to the Southwest corner of Block X, Lakeview, as shown by the recorded plat thereof; thence North, along the West line of said Block X to an intersection with the East and West center line of said Section 15; thence East to the center of said Section 15; thence North to the Northwest corner of the Southwest Quarter of the Northeast Quarter of said Section 15; thence East 355 feet; thence North to a point in the Southwest Quarter of the Southeast Quarter of Section 10, Township 51, Range 34, which is 336.72 feet North and 355 feet East of the Southwest corner thereof; thence East 77.3 feet; thence North 660.0 feet; thence East 897.2 feet to the East line of said Southwest quarter of the Southeast Quarter of said Section 10; thence North to a point 180 feet South of the East-West centerline of Section 10, Township 51, Range 34 West, thence East along a line 180 feet South of and parallel to the centerline of Section 10, Township 51 North, Range 34 West to the East line of said Section 10, thence South along said East line to a point 16½ feet South of the Southeast corner of the Northeast Quarter of the Northeast Quarter of the Southeast Quarter of said Section 10; thence East to the center of public road running North and South through the center of the Northwest Quarter of the Southwest Quarter of Section 11, Township 51, Range 34; thence North 16½ feet; thence East to the Northeast corner of the Southeast Quarter of the Northwest Quarter of the Southwest Quarter of said Section 11; thence North along the East line of the Northwest Quarter of the Southwest Quarter of Section 11 to the South line of "T" Highway at the North line of said Southwest Quarter of Section 11; thence East along the South line of said "T" Highway to a point 340 feet West of the East line of the West half of the Southeast Quarter of said Section 11; thence South 660 feet; thence West 84.9 feet; thence South 1050.0 feet; thence West 55.1 feet; thence South 920 feet to the South line of said Southeast Quarter

of said Section 11; thence West to the Southwest corner of the Southeast Quarter of said Section 11; thence South to the Southeast corner of the Northwest Quarter of Section 14, Township 51, Range 34, same also being the Southeast corner of Block R, Lakeview, as shown by the recorded plat thereof; thence West to the Northeast corner of the West half of the Southwest Quarter of said Section 14; thence South to the South line of said Section 14 to the Southeast corner of the West half of the Southwest Quarter thereof; thence West along the South line of Section 14 and of Section 15, Township 51, Range 34, to the Southwest corner of the Southeast Quarter of the Southeast Quarter of said Section 15; thence West along the South line of said Southeast Quarter of Section 15, to the center line of said public road; thence Northwesterly along the center line of said public road to the point of beginning  .   .   .

EXCEPT part of the Southeast Quarter of Section 15, Township 51, Range 34, described as follows: Beginning at a point ten chains East of the Southwest corner of said Southeast Quarter of Section 15, and running thence North 16.50 chains, thence East 10 chains, thence South 16.50 chains, thence West 10 chains to the point of beginning, excepting therefrom the North 10 acres  .   .   .

ALSO EXCEPT a tract described as beginning at a point in the South line of the Southeast Quarter of Section 15, Township 51, Range 34, 554 feet East of the Southwest corner of said quarter section; thence North 11 degrees West 225 feet; thence East 88 feet; thence North 106 feet; thence West 88 feet; thence North 88 feet; thence East 156 feet; thence South 429 feet; thence West 120 feet to the point of beginning.

(b) This section shall take effect on January 1, 1971.

Section B. The City Clerk shall deliver certified copies of this ordinance to the Board of Election Commissioners of Kansas City, Missouri, the Board of Election Commissioners of Clay County, Missouri, and the Clerk of the County of Platte County, Missouri, which shall be the authority of said Boards of Election Commissioners and the County Clerk respectively, to submit such amendment to the electors of said City as hereinbefore provided and to give public notice thereof as provided by law.

Section C. This ordinance providing for the submission of a Charter amendment to the people of Kansas City, Missouri, is hereby recognized to be an emergency measure within the meaning of Section 15, Article II of the Charter of said City, and as such, shall become effective, immediately upon its passage.

Approved as to form and legality:
s Richard N. Ward
Associate City Counselor

PROPOSED ANNEXATION
1970

LEGEND

– – – – EXISTING CITY LIMITS

PROPOSED ANNEXATION AREA

[A6108]